McLEOD, COMMISSIONER OF REVENUES, *v.* SANTA FE TRAIL TRANSPORTATION CO.

4-7051          168 S. W. 2d 413

Opinion delivered February 8, 1943.

226

*O. T. Ward,* for appellant.

*House, Moses & Holmes,* for appellee.

McFADDIN, J. Act 383 of the General Assembly of 1941 is the motor fuel tax law. In other cases we have construed certain sections of the said act. *Hardin, Commissioner,* v. *Croom,* 203 Ark. 519, 157 S. W. 2d 520; and *Park* v. *Hardin, Commissioner,* 203 Ark. 1135, 160 S. W. 2d 501. And we are now asked to interpret and construe portions of §§ 4 and 6 of the said act.

In the present case, The Sante Fe Trail Transportation Company (appellee here) filed suit in the Pulaski chancery court against Joe Hardin, Commissioner of Revenues of the State of Arkansas, (Murray B. McLeod has now been substituted as said Commissioner in this case). The complaint alleged that the plaintiff was engaged in operating motor buses for the conveyance of passengers within and without the state, and that under § 6 of the act, No. 383 of 1941, the plaintiff was allowed an exemption from the payment of taxes on motor fuel purchased in other states and brought into the state of Arkansas in the regular tanks in its motor vehicles, and the said exemption amounted to twenty gallons of fuel for each vehicle on each trip, and that notwithstanding the exemption allowed by the said section, the defendant, as Commissioner, was seeking to collect a tax on all the motor fuel brought into the state without giving credit for the said exemption allowance of twenty gallons; and that the plaintiff had offered and tendered the proper amount of taxes with the twenty gallons exempt, but the defendant had assessed additional sums against the plaintiff and would proceed to impose penalties and interfere with the operation of the plaintiff's business unless enjoined. The prayer was for injunction.

The Commissioner answered, denying that the plaintiff was entitled to an exemption of twenty gallons of

motor fuel, and claimed that the said act levied a tax on all motor fuel used in the state of Arkansas, and that the plaintiff had not reported on all motor fuel used in the state or offered to pay tax therefor. The defendant further pleaded that § 4 of Act 383 of 1941 imposed a tax on all motor fuel sold or used in the state, and that in so far as said § 6 allowed an exemption of twenty gallons to commercial operators for hire, the said section was void as being discriminatory against other operators and in favor of commercial vehicles for hire.

The chancery court sustained plaintiff's demurrer to the answer, and upon the defendant's refusal to plead further, a decree was entered enjoining and restraining the defendant, as the Commissioner of Revenues, from seeking to collect from the plaintiff the state tax of six and one-half cents per gallon on the first twenty gallons of motor fuel per vehicle purchased outside of the state and brought into the state in the regular tanks of the plaintiff's vehicles and used in operating the vehicles of the plaintiff in the state.

From the said decree there is this appeal; and the appellant contends: (1) that § 4 fixing an absolute tax on all motor fuel sold or used in the state or purchased for sale or use in the state is the governing provision and superior to § 6; and (2) that § 6, in so far as it might allow twenty gallons exempt, is void as arbitrarily discriminating in favor of motor carriers as opposed to other types of motor vehicles; and (3) that § 6 is invalid because there is no way to reconcile all the language of § 6 and to compute the tax under that section, and that therefore § 6 should be stricken out entirely, and all motor fuel should be taxed under § 4.

Preliminary to a discussion of the contentions, we point out some of the historical background of the said Act 383 of 1941, as follows:

(1) For a number of years the state of Arkansas has levied a tax on motor fuel. Act 63 of 1931 levied a tax; and by Act 11 of the Extraordinary Session of 1934, the tax was fixed at six and one-half cents on each gallon

"sold or used in this state or purchased for sale or use in this state."

(2) Act No. 67 of 1933 provided that no vehicle should be driven into the state of Arkansas carrying over twenty gallons of gasoline in the tank to be used as motor fuel until the state tax thereon had been paid.

(3) This Act 67 of 1933 was challenged by the Dixie Greyhound Lines, which filed suit in the United States District Court for the Eastern District of Arkansas seeking to enjoin the Commissioner of Revenues of the state from prohibiting the entry into the state of a motor vehicle carrying over twenty gallons of motor fuel until the state tax had been paid on such excess over twenty gallons. See 101 F. 2d 572 for the decision of the Circuit Court of Appeals. The case was carried to the United States Supreme Court and was decided by that tribunal on February 12, 1940, and is reported in 309 U. S. 176, 84 L. Ed. 683, 60 S. Ct. 504. The United States Supreme Court rendered a majority decision by Mr. Justice McReynolds with a concurring decision by Mr. Justice Stone and a dissenting opinion by Mr. Justice Black. In the majority opinion, Mr. Justice McReynolds found that each bus of the Dixie Greyhound Lines consumed about one gallon of gasoline for every five miles traveled, and that in a journey from Memphis to St. Louis less than one gallon was consumed in Tennessee, sixteen gallons were consumed in Arkansas, and fifty-one gallons were consumed in Missouri; and that to establish an arbitrary figure of twenty gallons of motor fuel and not even allow the surplus to be transported tax free through the state for use in another state, constituted a direct burden on interstate commerce. The majority opinion quoted from the Circuit Court of Appeals opinion, saying: "While we can understand how the use of state highways by a carrier can be roughly measured by the amount of gasoline which that carrier uses to move its vehicles over the highways, we are unable to comprehend how the use of the highways of one state can appropriately be measured by the amount of gasoline carried in the fuel tank of an interstate carrier for use upon the highways of another state."

In the concurring opinion, Mr. Justice Stone pointed out that the gasoline brought into the state in the tank of a vehicle for use solely in interstate commerce is exempt from taxation except for a limited state purpose, and this language appears: ''It must appear on the face of the statute or be demonstrable that the tax as laid is measured by or has some fair relationship to the use of the highways for which the charge is made.'' And again: ''In laying an exaction as a means of collecting compensation for the use of its highways the state must tax the commerce as it is done, and not as it might be done if the state could control it.''

In short, the United States Supreme Court affirmed the injunction against the enforcement of the 1933 Act.

(4) The decision of the United States Supreme Court was rendered on February 12, 1940. Then came Act No. 383 of 1941, which was presumably enacted to overcome the objections levied at the 1933 Act.

Also preliminary to a decision in this case, we point out certain applicable canons of judicial interpretation and construction, to-wit:

(1) It is a cardinal rule of construction that effect must be given, if possible, to the whole statute and every part thereof. To this end it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious and sensible. *Wilson* v. *Biscoe,* 11 Ark. 44; *Scott* v. *State,* 22 Ark. 369; *Williams* v. *State,* 99 Ark. 149, 137 S. W. 927, Ann. Cas. 1913A, 1056; *Miller* v. *Witcher,* 160 Ark. 479, 254 S. W. 1063; *Ledbetter* v. *Hall,* 191 Ark. 791, 87 S. W. 2d 996; 59 C. J. 1002; Lewis' Sutherland Statutory Construction, 2d Ed., § 368; Crawford on Statutory Construction, § 165; West's Arkansas Digest, ''Statutes,'' § 206.

(2) That interpretation should be given to the statute to sustain it rather than to defeat it; and it is only where sections are in hopeless conflict that one section should be stricken. *Cherry* v. *Leonard,* 189 Ark. 869, 75 S. W. 2d 401; *Hodges* v. *Dawdy,* 104 Ark. 583, 149 S. W. 656; *Graves* v. *McConnell,* 162 Ark. 167, 257 S. W. 1041; 59 C. J. 946, 1000; Lewis' Sutherland Statutory

Construction, § 380; Crawford on Statutory Construction, § 166; West's Arkansas Digest, "Statutes," § 207.

(3) To aid in the construction of a statute, it is presumed that the Legislature, in enacting the law, did so with the full knowledge of the constitutional scope of its powers, of prior legislation on the same subject and of judicial decisions under the pre-existing law. *Rhodes v. Cannon,* 112 Ark. 6, 14, 164 S. W. 752; *Merchants' Transfer & Warehouse Co.* v. *Gates,* 180 Ark. 96, 21 S. W. 2d 406; *Texarkana Special School District* v. *Consolidated District,* 185 Ark. 213, 46 S. W. 2d 631. 59 C. J. 1008, 1014; Crawford on Statutory Construction, § 161; West's Arkansas Digest, "Statutes," § 212.

Viewed in the light of all of the foregoing, we see no conflict between § 4 and § 6 of Act 383 of 1941. The first part of § 4 levies the tax on all motor fuel "sold or used in this state, or purchased for sale or use in this state." In the preceding sections, the Act made reference to distributors, dealers, tank cars, tank farms, etc. Read in the light of these preceding sections, it is clear that the first part of § 4 is the general levying section. The concluding parts of § 4, and all of §§ 5 and 6 take up various exemptions and special situations in order to make the tax fair and equitable in such cases. For example, paragraphs lettered A, B, C, and D, respectively, of § 4 deal with exempt cases and provide the circumstances under which exemptions may be obtained. Then in § 5, there is provision made for the tax on motor fuel sold in cities and incorporated towns which border on, or are adjacent to,. the state line, etc.

Then in § 6 (the one challenged here) the Legislature clearly attempted to meet the situation brought about by the decision of the United States Supreme Court in the case of *McCarroll* v. *Dixie Greyhound Lines, Inc.,* as previously mentioned (309 U. S. 174, 84 L. Ed. 683, 60 S. Ct. 504). The first sentence of § 6 reads as follows: 1. "No person shall drive, or cause to be driven into the State of Arkansas, any motor carrier, bus, or other motor vehicle operated for hire, without first having paid a tax of six and one-half (6½) cents per gallon

on all motor fuel, over twenty gallons, *used or to be used in operating such vehicle while in the State of Arkansas.''* (Italics our own.)

It is evident from this sentence that the Legislature placed (1) motor carriers, (2) motor buses and (3) other motor vehicles operated for hire into one classification distinct from all other motor vehicles; and provided that these three types of conveyances (motor carriers, motor buses and other motor vehicles operated for hire) should each be allowed an exemption of twenty gallons of motor fuel brought into the state. This was possibly under the idea that such an amount would take care of any incompleted interstate journey, considered in the light of Mr. Justice Stone's concurring opinion in the Dixie Greyhound case *(supra)*.

Even after the twenty gallons of motor fuel were exempted, still the Legislature did not tax *all the remaining fuel in the tank,* but only levied the tax on *all that part over twenty gallons that was "used or to be used in operating the vehicle while in the state of Arkansas."* Mr. Justice McReynolds had pointed out in the Dixie Greyhound case *(supra)* that in going from Memphis to St. Louis, fifty-one gallons of gas would be carried through Arkansas to be used in Missouri, and so the first sentence of § 6, as above quoted, levied the tax only on that portion of the gasoline "used or to be used in operating the vehicle *while in the State of Arkansas."* In actual practice under this situation, the bus driver would stop at the entry port when he came into the state and have his fuel tank measured and his twenty gallons of exemption determined, and then when he left the state, he would stop at the exit port and have it measured again and determine the amount of motor fuel that he had used in the state of Arkansas, and he would pay tax on that part used in the state in excess of the twenty-gallon exemption. This is what the first sentence of § 6 means.

The second and third sentences of § 6 provide for an alternate or optional system of determining the motor fuel used in the state. These two sentences read as follows:

2. "Any person operating such vehicles into or through the State of Arkansas *on a regular schedule* who desires to defer the payment of their motor fuel tax shall be required to file a corporate surety bond satisfactory to the Commissioner of Revenues conditioned that such person shall report and pay his tax on the 20th day of each month *on all motor fuel consumed* in Arkansas in such vehicle or vehicles during the preceding calendar month."

3. "To ascertain the amount of such motor fuel used in such manner, such person shall report to the Commissioner of Revenues on forms to be prescribed by the Commissioner a schedule of all mileage traveled in the State of Arkansas by such vehicle or vehicles, and shall remit as the tax due under this provision a sum equivalent to one-fifth of the total mileage thus traveled, multiplied by the amount of the tax levied hereby." (Italics our own.)

It will be observed that this optional or alternate method of determining the tax does not apply to all motor carriers, motor buses and motor vehicles operating for hire, but it applies only to those that operate *on a regular schedule.* It provides that any such vehicle embraced within the first sentence of § 6 and which operates on a regular schedule can file bond and make a report of mileage actually traveled in Arkansas and pay "a sum equivalent to one-fifth of the total mileage traveled" multiplied by the tax of six and one-half cents per gallon. It is clear that the first sentence of § 6 allows an exemption of twenty gallons where the gasoline is actually measured, and that the optional or alternate system (provided by sentences two and three of § 6) does not allow the twenty-gallon exemption because the calculation in sentences two and three is based on the miles actually traveled over the highways in Arkansas; and Mr. Justice McReynolds, in the majority opinion in the Dixie Greyhound case *(supra)* said: "The often announced rule is that while generally a state may not directly burden interstate commerce by taxation she may require all who use her roads to make reasonable compensation therefor." We have previously quoted

from the majority opinion and the concurring opinion, and it seems clear that the United States Supreme Court held that a tax based on actual use of the highways is valid; and in the Dixie Greyhound case there was an affirmative finding that a bus consumes about one gallon of gasoline for every five miles traveled; and that is exactly the figure used in sentences two and three of § 6 of the Act as above shown.

If the appellee wants the twenty-gallon exemption on each trip, it can stop the motor bus at the entry port and measure the fuel, and then remeasure it at the exit port, and in that event, the twenty-gallon exemption applies. But if the appellee wants to save the delay of stopping and measuring the fuel in the tank, then appellee can take the optional or alternate system of determining the tax as set out in sentences two and three of the Act, and when it takes the alternate or optional system as set out in sentences two and three of the Act, it pays a tax on the basis of miles actually traveled over the highways of the state.

The appellant contends that the fourth sentence of § 6 militates against the construction here contained. We see nothing in that sentence that impairs the construction of § 6 as here set forth. That sentence reads: 4. ''It is determined by the General Assembly of the State of Arkansas that ten (10) miles per gallon of motor fuel represents the normal and average consumption of such motor fuel by motor vehicles operating in the State of Arkansas.''

The appellant says that the tax is levied on the basis of five miles to the gallon and the Legislature has declared that the normal and average consumption is ten miles to the gallon, and that therefore there is an irreconcilable conflict between the legislative declaration of ten miles to the gallon and the tax calculation basis of five miles to the gallon. But in making that contention the appellant has overlooked the fact that the *motor vehicles* referred to in the fourth sentence, as above quoted, are not *motor carriers, motor buses* or other *motor vehicles for hire* (as classified in the second and third sentences of § 6), but are motor vehicles generally;

that is, all kinds, types and sizes. Sentence four is a legislative declaration that the ordinary motor vehicle of average type, size and kind, gets ten miles to the gallon of fuel. The words "motor vehicles" as used in sentence 4 of § 6 refers to "motor vehicles" as defined in the Act; and paragraph "A" of § 2 of Act 383 under consideration defines "motor vehicles" to be "all vehicles, engines, machines or mechanical contrivances which are propelled by internal combustion engines, or motors and used for travel on public roads and highways." In the Dixie Greyhound case *(supra)* the United States Supreme Court declared that motor buses engaged in transporting passengers such as in that case (and in the case at bar) used one gallon for every five miles. So, the Legislature, in the alternate or optional plan of tax calculation, in stating it to be one gallon for five miles, placed the calculation on a basis approved by the Supreme Court of the United States. But for fear that someone might claim a discriminatory classification, the Legislature immediately declared that ordinary passenger cars, etc., get ten miles per gallon, as distinct from motor carriers, motor buses and other motor vehicles operated for hire and operating on a regular schedule, as set forth in sentences two and three of § 6, which get only five miles per gallon. Thus, sentence four, instead of disturbing our construction of sentences two and three as herein given, really strengthens and clarifies our construction.

This interpretation of the first four sentences of § 6 likewise disposes of appellant's contention that § 6 makes for arbitrary discrimination. We think § 6 makes fair and reasonable bases of classifying the motor vehicles there embraced, in that it:

1. Separates motor carriers, motor buses, and other motor vehicles operated for hire into one class, and all other motor vehicles into another class.

2. It allows an alternate or optional tax determination basis for such motor carriers, motor buses and motor vehicles operated for hire as *operate on regular schedules,* as *compared with those not operating on regular schedules.*

Appellant argues that the classification of motor carriers, motor buses, and other motor vehicles operated for hire as opposed to all other motor vehicles is an arbitrary classification; but with this argument we cannot agree. In the case of *Hardin, Commissioner,* v. *Vestal,* 204 Ark. 492, 162 S. W. 2d 923, this court quoted from the Kentucky Court of Appeals in the case of *Williams* v. *City of Bowling Green,* 254 Ky. 11, 70 S. W. 2d 967: " 'The fact that a statute discriminates in favor of certain classes does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, or if any state of facts reasonably can be conceived to sustain it.' The above quoted statement is in substance the holding of the U. S. Supreme Court in *State Board of Tax Commissioners of Indiana* v. *Jackson,* 283 U. S. 527, 51 S. Ct. 540, 75 L. Ed. 1248, 73 A. L. R. 1464, 75 A. L. R. 1536, and it was there further held that the legislature may not only classify, but for taxation purposes, it may subdivide classes into particular classes."

To summarize, it is therefore our opinion and holding that:

1. There is no conflict between those parts of § 4 and § 6 of Act 383 of 1941 as are now under consideration, and the said parts are capable of interpretation and construction, as here shown, which give full force and effect to every part of the sections under consideration.

2. That motor carriers, motor buses and other motor vehicles operating for hire (as referred to in sentence one of § 6), constitute one classification as opposed to all other motor vehicles, which constitute another classification; and that these are fair classifications.

3. That under sentences two and three of the said § 6, an alternate or optional method of determining the calculation of the tax is allowed to operators of motor carriers, motor buses and other motor vehicles operated for hire, provided they operate on a regular schedule; and this provision about operating on a regular schedule as opposed to not operating on a regular schedule is a fair classification.

4. That the twenty-gallon exemption referred to in sentence one of said § 6 applies only when the motor fuel is actually measured at the port of entry and actually measured at the port of exit; and that the twenty-gallon exemption does not apply when the alternate or optional method of determining the tax is used by the operator under sentences two and three of said § 6.

It, therefore, follows that this cause is reversed and remanded to the chancery court with directions to overrule the appellee's demurrer to the answer and to determine if the Commissioner of Revenues is proceeding as declared herein, and for further proceedings in accordance with this opinion.

Mr. Justice SMITH dissents.