Randy DAVIS *v.*
OLD DOMINION FREIGHT LINE, INC.

00–193                                    20 S.W.3d 326

Supreme Court of Arkansas
Opinion delivered June 29, 2000

*The James Law Firm*, by: *William O. "Bill" James Jr.* and *Steven R. McNeely* for appellant.

*Kirkpatrick, Aud & Williams, L.L.P.*, by: *Michael E. Aud*, for appellees.

*Chisenhall, Nestrud & Julian, P.A.*, by: *Jim L. Julian* and *Mark W. Hodge*, for *amicus curiae* Arkansas Self-Insurers Association, Inc.

W.H. "DUB" ARNOLD, Chief Justice. Appellant, Randy Davis, brings the instant appeal challenging a decision of the Workers' Compensation Commission denying his claim for medical expenses and additional temporary total-disability benefits. In a published opinion dated January 26, 2000, the Court of Appeals reversed and remanded the Commission's decision. *See Davis v. Old Dominion Freight Line, Inc.*, 69 Ark. App. 74, 13 S.W.3d 171 (2000). Pursuant to Ark. Sup. Ct. R. 2-4 (2000), we granted review of the appellate court's decision. We affirm the Court of Appeals, and we reverse and remand the Commission's decision because it fails to display a substantial basis for the denial of relief.

## Background

The parties agree that on April 4, 1996, Davis sustained a compensable right-ankle injury while working for appellee, Old Dominion Freight Line, Inc. On September 11, 1996, Dr. Jay Lipke performed a surgical repair of a partial dislocation of Davis's peroneal tendons. Subsequently, Dr. Lipke diagnosed Davis with a blood clot, which required hospitalization and anticoagulant medication. As of November 1, 1996, Dr. Lipke's notes indicated that Davis's wound was well-healed, his ankle demonstrated a good range of motion, and there was no evidence of subluxation of the tendon. Dr. Lipke also remarked that he anticipated that Davis would be released to return to work when the blood-clot condition stabilized.

Unfortunately, on approximately November 13, 1996, Davis aggravated the surgical repair when he stepped awkwardly on his ankle to avoid stepping on his two-year-old niece. At the time of the incident, Davis heard a loud pop. He returned to Dr. Lipke, who treated the new injury as a sprain. However, Dr. Lipke noted on December 2, 1996, and December 9, 1996, that the incident disrupted the prior surgical repair because Davis's healing process was incomplete.

As a result of the November injury, Davis sought additional workers' compensation benefits. In response, Old Dominion asserted that the November 1996, incident constituted an independent intervening cause, barring an award of additional benefits. Following a hearing, the Administrative Law Judge agreed with Old Dominion and concluded that Davis had failed to prove entitlement to additional benefits. Davis appealed the ALJ's decision to the Workers' Compensation Commission, which affirmed and adopted the ALJ's findings.

Following the Commission's decision affirming the ALJ's denial, Davis appealed to the Arkansas Court of Appeals. The appellate court reversed and remanded the case, reasoning that the Commission had no substantial basis to deny compensability because it had applied the wrong legal standard to determine whether the November 1996 incident constituted an independent intervening cause. Significantly, the appellate court concluded that although the legislature expressed an intent, via Act 796 of 1993, to

overrule "all prior opinions or decisions of any administrative law judge, the Workers' Compensation Commission, or courts of this state contrary to or in conflict with any provision of this act," that (1) that declaration was not a blanket repeal of all prior decisions on the subject of independent intervening causes, and (2) preexisting case law regarding independent intervening causes remains in force for new act cases.

In support of its decision reversing the Commission, the Court of Appeals cited with approval its prior decisions in *Georgia-Pacific Corp. v. Carter*, 62 Ark. App. 162, 969 S.W.2d 677 (1998) (holding that new act has not changed the relevant analysis of independent-intervening-cause cases), and *Guidry v. J. & R Eads Constr. Co.*, 11 Ark. App. 219, 669 S.W.2d 483 (1984) (decision under prior act finding that claimant's activity triggering subsequent complication must be "unreasonable under the circumstances" to be an independent intervening cause).

From the appellate court's decision reversing and remanding the Commission, comes the instant appeal. In their petition for review from the Court of Appeals' decision, appellees and the Arkansas Self Insurers Association, as *amicus curiae*, argue that (1) Act 796 unambiguously declared the legislature's intent to repeal all prior opinions, decisions, and case law in conflict with the new act, (2) the appellate court's reliance on *Carter* and *Guidry* was misplaced, and (3) Ark. Code Ann. section 11-9-102(5)(F)(iii) (Repl. 1996), specifically controls the proper disposition of the instant case and dictates denial of additional benefits. In response, Davis argues that the legislature merely intended to repeal all prior *inconsistent* case law.

## I. Substantial evidence

■ ■ Appellant's first point on appeal challenges the sufficiency of the evidence supporting the Commission's decision denying him additional benefits on the basis that his November 1996 accident was an independent intervening cause. Notably, when we grant a petition to review a case decided by the Court of Appeals, we review it as if it was filed originally in this court. *See Williams v. State*, 328 Ark. 487, 944 S.W.2d 822 (1997) (citing *Allen v. State*, 326 Ark. 541, 932 S.W.2d 764 (1996)). Moreover, on appeal, this

court will view the evidence in the light most favorable to the Commission's decision and affirm when that decision is supported by substantial evidence. *Ester v. National Home Ctrs., Inc.*, 335 Ark. 356, 361, 981 S.W.2d 91 (1998) (citing *Golden v. Westark Community College*, 333 Ark. 41, 969 S.W.2d 154 (1998); *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997)).

■ ■ Substantial evidence exists if reasonable minds could reach the same conclusion. *Id.* We will not reverse the Commission's decision unless fair-minded persons could not have reached the same conclusion when considering the same facts. *Id.* Where, as here, the Commission denies benefits because it determines that the claimant has failed to meet his burden of proof, the substantial-evidence standard of review requires us to affirm if the Commission's decision displays a substantial basis for the denial of relief. *McMillan v. U.S. Motors*, 59 Ark. App. 85, 953 S.W.2d 907 (1997).

Here, the parties agree that Davis sustained a compensable ankle injury in April of 1996. Following his surgery in September of 1996 and treatment for a blood clot in November of 1996, Davis testified that his doctor informed him that once the blood-clot treatment stabilized, he could return to work within approximately two to four weeks from November 1. Consistent with that testimony, Dr. Lipke's November 1, 1996, report states that Davis's wound was "well healed" and that Davis demonstrated "good range of motion" with "no evidence of subluxation of the tendon." Dr. Lipke's report also confirmed that although Davis would remain temporarily totally disabled until his next scheduled appointment in one month, once his blood-clot anticoagulant therapy was well stabilized, Davis could probably return to work, "in the next two to four weeks." According to Davis, Old Dominion continued to pay him workers' compensation benefits for four weeks following the November 1 doctor's appointment, representing the projected healing period as indicated by Dr. Lipke.

Davis also admitted that he sustained a nonwork-related injury to the same ankle a few days before November 13, 1996. Davis then sought treatment from Dr. Lipke. According to his November 13, 1996, report, Dr. Lipke remarked that Davis "was doing well until the other day when his two-year-old niece snuck behind him and twisted his right ankle. There was a loud pop evident. He's had significant swelling since that time." Given that Davis acknowl-

edged that the subsequent injury was nonwork related, we must decide whether the Commission applied the correct legal standard to determine whether that injury constituted an independent intervening cause. Therefore, we address the merits of appellant's second point on appeal in order to resolve the first.

## II. Section 11-9-102(5)(F)(iii)

■■ The heart of the instant appeal concerns the interpretation of the legal standard of review set forth in Ark. Code Ann. section 11-9-102(5)(F)(iii) (Repl. 1996), now codified as section 11-9-102(4)(F)(iii) (Supp. 1999). Section 11-9-102(5)(F)(iii) states that:

> Under this subdivision (5)(F), benefits shall not be payable for a condition which results from a nonwork-related *independent intervening cause* following a compensable injury which causes or prolongs disability or a need for treatment. *A nonwork-related independent intervening cause does not require negligence or recklessness on the part of a claimant.*

(Emphasis added.) Significantly, when the construction of a statute is at issue, we will presume that the General Assembly, in enacting it, possessed the full knowledge of the constitutional scope of its powers, full knowledge of prior legislation on the same subject, and full knowledge of judicial decisions under preexisting law. *McLeod, Comm'r of Revenues v. Santa Fe Trail Transp. Co.*, 205 Ark. 225, 168 S.W.2d 413 (1943). We must also give effect to the legislature's intent, making use of common sense and giving words their usual and ordinary meaning. *Kyle v. State*, 312 Ark. 274, 849 S.W.2d 935 (1993).

Although the parties agree that the November 1996 injury was caused by a nonwork-related event, they disagree as to whether the incident was an independent intervening cause. In support of the Commission's decision, appellees refer to the history of the independent-intervening-cause doctrine. In 1984, the Court of Appeals adopted the principle that if there is a causal connection between a primary compensable injury and the subsequent disability, there is no independent intervening cause unless the subsequent disability is triggered by activity of the claimant that is "unreasonable under the

circumstances." *Guidry v. J. & R. Eads Constr. Co.*, 11 Ark. App. 219, 223, 669 S.W.2d 483, 485 (1984) (citations omitted).

Subsequently, the legislature enacted Act 796 of 1993, with the purpose of annulling pre-1993 Commission and court decisions interpreting and applying the pre-1993 act. Appellees also note that prior to Act 796 of 1993, the workers' compensation laws did not address the term "independent intervening cause." Therefore, according to appellees, Act 796 was an unambiguous rejection of all prior case law, including *Guidry*. Since Davis's injuries occurred after the effective date of Act 796, appellees assert that the Commission applied the correct legal standard.

█ In response, Davis argues that this interpretation of section 11-9-102(5)(F)(iii) makes any analysis illusory because all nonwork-related incidents that prolong disability or need for treatment would automatically be deemed independent intervening causes as a matter of law. Further, Davis contends that section 11-9-102(5)(F)(iii) is actually a codification of preexisting case law and, specifically, the *Guidry* test. We agree. In *Guidry*, the appellate court held that:

> . . . — *not only can there be an independent intervening cause without negligence or recklessness on the claimant's part*, but unreasonable conduct on a claimant's part may create an independent intervening cause which would otherwise not exist.

(Emphasis added.) *Guidry*, 11 Ark. App. at 224, 669 S.W.2d at 486. Similarly, the legislature expressed in section 11-9-102(5)(F)(iii) that:

> . . . a nonwork-related independent intervening cause does not require negligence or recklessness on the part of the claimant.

The statutory language at issue tracks the language in *Guidry* but leaves the standard of unreasonableness intact.

█ Moreover, we must assume that the legislature was aware of *Guidry* when it enacted section 11-9-102(5)(F)(iii), and of *Georgia-Pacific Corp. v. Carter*, 62 Ark. App. 162, 969 S.W.2d 677 (1998), when it recently enacted amendments to the Workers' Compensation Act in 1999. The legislature simply elected not to change existing law regarding independent intervening causes. In the absence of a statutory definition of independent intervening cause,

we conclude that the legislature adopted the legal standard established and applied in prior Commission decisions and case law.

■ In conclusion, we hold that the Commission's decision failed to display a substantial basis for the denial of relief because it failed to apply the correct legal standard to determine whether appellant's November 1996 accident constituted an independent intervening cause. Accordingly, we reverse the Commission's decision and remand for further action consistent with this opinion.

GLAZE and SMITH, JJ., dissenting.

TOM GLAZE, Justice, dissenting. The majority opinion is seriously in error in holding that Ark. Code Ann. § 11-9-102(5)(F)(iii) (Supp. 1999) merely codifies preexisting case law found in *Guidry v. J. & R. Eads Constr. Co.*, 11 Ark. App. 219, 669 S.W.2d 483 (1984). That statutory provision clearly changed the law announced in *Guidry*. In *Guidry*, the court adhered to the following principles:

> When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, *unless it is the result of an independent intervening cause attributable to claimant's own negligence or misconduct.* (Emphasis added.)

> \* \* \*

> [T]he question is whether there is a causal connection between the primary injury and the subsequent disability and if there is such a connection, there is no independent intervening cause *unless the subsequent disability is triggered by activity on the part of the claimant which is unreasonable under the circumstances.* (Emphasis added.)

The above principles clearly provide that an independent intervening cause or connection is shown when the claimant's own negligence, misconduct, or unreasonable activity results in a subsequent or second injury. Section 11-9-102(5)(F)(iii), on the other hand, provides the claimant's negligence or recklessness is unnecessary to show a nonwork-related independent intervening cause. Section 11-9-102(5)(F)(iii), adopted by Act 796 of 1993 after the *Guidry* decision, further states that workers' compensation *benefits shall not be payable for a condition which results from a nonwork-related*

*independent intervening cause following a compensable injury* which causes or prolongs disability or a need for treatment.

Here, claimant's Randy Davis's second injury to his ankle was clearly nonwork-related, since it occurred at his sister's house. Randy's own conduct caused his second injury when, to avoid contact, he stepped over his two-year-old niece and came down awkwardly on the right ankle he had previously injured at work. There is no substantial evidence to show Davis's second injury was due to his own nonwork-related independent activity. Because the plain language in § 11-9-102(5)(F)(iii) clearly excludes benefits ion these circumstances, I must respectfully dissent.

SMITH, J., joins this dissent.