Mr. Charles S. Campbell, Executive Director Arkansas State Board of Pharmacy 101 E. Capitol, Suite 218 Little Rock, AR 72201
Dear Mr. Campbell:
You have requested an Attorney General opinion concerning the exemptions that are listed in A.C.A. § 5-64-1101 (as amended by Act 1209 of 2001).
Your question is:
 Is a manufacturer, wholesaler, or distributor who possesses a sales and use tax permit issued by the Arkansas Department of Finance and Administration required to be licensed by the Arkansas State Board of Pharmacy in order to comply with Act 1209 of 2001, and to avoid possession penalties as described in A.C.A. § 5-64-1101(c)?
RESPONSE
Although the law is not entirely clear on this issue, and although plausible arguments can be presented in support of both a negative and an affirmative answer, it is my opinion that the statute should be interpreted to require manufacturers, wholesalers, or distributors who possess sales and use tax permits issued by the Arkansas Department of Finance and Administration, to be licensed by the Arkansas State Board of Pharmacy in order to comply with Act 1209 of 2001, and to avoid criminal prosecution under A.C.A. § 5-64-1101(c).
The provision about which you have inquired (A.C.A. § 5-64-1101, as amended by Act 1209 of 2001) states:
 (a) It shall be unlawful for any person to possess more than five (5) grams of ephedrine, or nine (9) grams of pseudoephedrine or phenylpropanolamine, or their salts, optical isomers and salts of optical isomers, alone or in a mixture, except:
 (1) Any pharmacist or other authorized person who sells or furnishes ephedrine, pseudoephedrine or phenylpropanolamine, their salts, optical isomers and salts of optical isomers, upon the prescription of a physician, dentist, podiatrist, or veterinarian; or
 (2) Without a prescription, pursuant to the Federal Food, Drug, and Cosmetic Act or regulations adopted thereunder provided that the person possesses a sales and use tax permit issued by the Arkansas Department of Finance and Administration; or
 (3) Any physician, dentist, podiatrist, or veterinarian who administers or furnishes ephedrine, pseudoephedrine or phenylpropanolamine, or their salts, optical isomers and salts of optical isomers to his or her patients; or
 (4) Any manufacturer, wholesaler, or distributor licensed by the State Board of Pharmacy who sells, transfers, or otherwise furnishes ephedrine, pseudoephedrine or phenylpropanolamine, or their salts, optical isomers and salts of optical isomers, to a licensed pharmacy, physician, dentist, podiatrist, veterinarian, or any person who possesses a sales and use tax permit issued by the Arkansas Department of Finance and Administration.
 (b) Possession of more than five (5) grams of ephedrine or more than nine (9) grams of pseudoephedrine or phenylpropanolamine, or their salts, optical isomers and salts of optical isomers shall constitute prima facie evidence of the intent to manufacture methamphetamine or another controlled substance in violation of this subchapter, unless the person qualifies for an exemption listed in subsection (a) of this section.
 (c) Any person who violates the provisions of this section shall be guilty of a Class D felony.
A.C.A. § 5-64-1101 (as amended by Act 1209 of 2001).
A question has arisen because it is unclear whether manufacturers, wholesalers, and distributors must comply with Section (a)(4) (i.e.,
obtain a license) in order to avoid the risk of criminal prosecution, or whether they can comply with the statute by obtaining a sales and use tax permit in accordance with Section (a)(2).
This issue is a difficult one, because the language of the statute seems to allow either interpretation, based upon equally plausible arguments. The Arkansas Supreme Court has never interpreted this statute. In the absence of such judicial guidance, I must consider the various rules of statutory interpretation that the court has applied to other situations involving unclear statutory language, and I must consider how a court might apply those rules to this situation. It is my opinion that a court applying those rules would interpret A.C.A. § 5-64-1101 to require that manufacturers, wholesalers, and distributors comply with the statute under Section (a)(4). That is, manufacturers, wholesalers, and distributors must obtain a license from the Pharmacy Board in order to avoid criminal prosecution under A.C.A. § 5-64-1101 — even if they hold a sales and use tax permit issued by the Department of Finance and Administration. The fact that a wholesaler, manufacturer, or distributor holds a sales and use tax permit is not sufficient, in my opinion, for compliance with A.C.A. § 5-64-1101.
The most fundamental rule of statutory construction is to give effect to the legislative intent. Ford v. Keith, 338 Ark. 487, 996 S.W.2d 20
(1999). Accordingly, my conclusion regarding the interpretation of A.C.A. § 5-64-1101 is based primarily on an examination of the purpose of the statute, considered in conjunction with the exemptions set forth therein. That purpose is to provide a means of monitoring and controlling the possession and sale within the state of substances that can be used in the manufacture of methamphetamine. The exemptions should be interpreted in a manner that is consistent therewith.
The exemption stated in Section (a)(2), which allows compliance by holding a sales and use tax permit, is arguably the easiest to comply with. I interpret this exemption to apply only to retailers. Retailers are subject to other significant controls and oversight requirements under Act 1209. Wholesalers are not subject to the same controls and requirements that apply to retailers. This fact supports the view that they should not be allowed to comply under Section (a)(2), but rather, must comply under Section (a)(4), which requires licensure by the Board of Pharmacy. This interpretation is also supported by the fact that the exemption stated in Section (a)(4) specifically mentions manufacturers, wholesalers, and distributors. The Arkansas Supreme Court has held that in situations in which the general terms in a statute are inconsistent with its more specific provisions, the more specific provisions will be regarded as the clearer and more definite expression of the legislative will. Langford v. Brand, 274 Ark. 426, 626 S.W.2d 198 (1981). I take the specific reference to wholesalers, manufacturers, and distributors in Section (a)(4) to mean that the legislature intended Section (a)(4) to be the exemption that is applicable to those groups. This reading furthers the purpose of the statute, because Section (a)(4) imposes stricter oversights on parties who may not otherwise be monitored.
Another reason that I interpret Section (a)(2) to apply only to retailers and not to wholesalers, manufacturers, and distributors, is that it is retailers — not wholesalers, manufacturers, and distributors — who typically collect and pay sales and use taxes and therefore have sales and use tax permits. The legislature is presumed to have known this fact at the time it enacted A.C.A. § 5-64-1101. See generally Davis v. OldDominion Freight Line, Inc., 341 Ark. 751, 20 S.W.3d 326 (2000). Although it is true that wholesalers, manufacturers, and distributors can obtain sales and use tax permits from the Department of Finance and Administration,[1] see A.C.A. § 26-52-201(e), an interpretation allowing wholesalers, manufacturers, and distributors to comply with A.C.A. § 5-64-1101 by holding such permits does not serve the purposes of A.C.A. § 5-64-1101. Wholesalers, manufacturers, and distributors who hold these permits are not required to submit reports of their business activities to the Department as frequently as are retailers. As a result, a failure to submit this report would not trigger the immediate response that a retailer's failure to report would trigger. For this reason, allowing wholesalers, manufacturers, and distributors to comply with A.C.A. § 5-64-1101 simply by holding a sales and use tax permit would thwart the statute's purpose of monitoring and controlling the possession and sale within the state of substances that can be used in the manufacture of methamphetamine.
Moreover, allowing wholesalers, manufacturers, and distributors to comply by holding a sales and use tax permit would, in effect, defeat the purpose of the exemption stated in Section (a)(4). As previously mentioned, it is considerably easier and less expensive to obtain and maintain a sales and use tax permit than it is to obtain licensure from the Board of Pharmacy, and the reporting and compliance requirements for maintaining the sales and use tax permit are much more lenient than those for maintaining the Pharmacy Board license. For example, the sales and use tax permit requires a one-time fee of $50.00, whereas the license requires a much higher first time fee, plus a yearly renewal fee. In addition, the Pharmacy Board conducts regular inspections of the wholesaler's premises, whereas no such inspection is conducted by the Department of Finance and Administration in connection with the sales and use tax permit. If manufacturers, wholesalers, and distributors were allowed to choose between Section (a)(2) and Section (a)(4), it is unlikely that they would ever choose Section (a)(4). That section would thus be superfluous. The Arkansas Supreme Court has held that in interpreting statutory language, it is inappropriate to give the statute a reading that would result in an absurdity, or to presume that the legislature enacted a vain and meaningless law. See Yarbrough v. Witty,336 Ark. 479, 987 S.W.2d 257 (1999); Lawhon Farm Servs. v. Brown,335 Ark. 272, 984 S.W.2d 1 (1998); Citizens To Establish A Reform Party v.Priest, 325 Ark. 257, 926 S.W.2d 432 (1996); Henson v. Fleet MortgageCo., 319 Ark. 491, 892 S.W.2d 250 (1995); Neely v. State, 317 Ark. 312,877 S.W.2d 589 (1994); Death and Total Permanent Disability Trust Fundv. Whirlpool Corp., 39 Ark. App. 62, 837 S.W.2d 293 (1992). This rule of statutory interpretation supports an interpretation of A.C.A. § 5-64-1101
under which manufacturers, wholesalers, and distributors are required to comply with Section (a)(4) in order to avoid criminal prosecution.
My interpretation of A.C.A. § 5-64-1101 is also bolstered by the explicitly stated intent of Act 1209 of 2001, which amended A.C.A. §5-64-1101 to add certain substances to its prohibitions. The emergency clause of the Act stated:
 It is found and determined by the General Assembly of the State of Arkansas that the methamphetamine problem has become epidemic in the State of Arkansas; that drastic measures are needed to control the sale and possession of large quantities of over-the-counter medicines which contain the necessary ingredients for making methamphetamine; that the public's inconvenience is far outweighed by the necessity of curtailing the illegal production and distribution of methamphetamine[.]
Acts 2001, No. 1209, Emergency Clause.
To interpret A.C.A. § 5-64-1101 so as to allow a choice between Sections (a)(2) and (a)(4) would be contrary to the above-stated purpose of the Act. It would make the possession and sale of the prohibited substances easier, rather than more difficult, and would give the state less control over such possession and sale.
As indicated previously, I am aware that a plausible argument can be made in favor of allowing wholesalers, manufacturers, and distributors to choose between Section (a)(2) and Section (a)(4) as a means of complying with A.C.A. § 5-64-1101. Indeed, I acknowledge that some wholesalers, manufacturers, and distributors who have previously only dealt in non-prescription forms of ephedrine may have believed they were complying with the statute under Section (a)(2), simply by holding a sales and use tax permit. The language of the statute can be read to allow compliance in that manner. This interpretation would be supported by the fact that wholesalers, manufacturers, and distributors are subject to oversight by the federal government, pursuant to the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 301 et seq.) and the regulations promulgated thereunder. See, e.g., 21 C.F.R. § 1301.01 et seq. Nevertheless, for the reasons stated above, I believe that a court would opt for the interpretation under which wholesalers, manufacturers, and distributors must be licensed by the Board of Pharmacy in order to avoid the risk of criminal prosecution penalties under the statute. This interpretation appears to be more consistent with the purposes of the statute.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
[1] It is my understanding that wholesalers, manufacturers, and distributors usually obtain such a permit for purposes of establishing to suppliers that their transactions are exempt from such taxes.