Brent Davis, Prosecuting Attorney Second Judicial Circuit P.O. Box 491 Jonesboro, AR 72403
Dear Mr. Davis:
You have presented the following questions for my opinion:
 (1) Do the commissions from prisoner telephone services referred to in A.C.A. § 12-41-105 go into a separate account or are they to be combined into one account with the funds received from fees provided by A.C.A. § 21-6-307(b)?
 (2) If both the fees provided in A.C.A. § 21-6-307(b) and the commissions derived from A.C.A. § 12-41-105 are to be placed into a single fund account, are those portions derived from the fees still to be used solely for the purposes enumerated in A.C.A. § 21-6-307(b)(2)(C), or is the entire fund subject to being allocated up to 50% for the maintenance and operation of the county jail?
 (3) Does the sheriff have the authority to make expenditures from the Communications Facility and Equipment Fund without the quorum court appropriating such an expenditure? Does the proper procedure for expending money from the Fund (i.e., the sheriff's discretion or appropriation by the quorum court) differ based on whether the funds to be expended were generated by fees or telephone commissions?
 (4) Is it within the sheriff's discretion as to what percentage, if any, of the Fund (up to 50%) is expended for operation and maintenance of the county jail or can the quorum court appropriate up to 50% of the fund for that purpose?
RESPONSE
Question 1 — Do the commissions from prisoner telephone services referredto in A.C.A. § 12-41-105 go into a separate account or are they to becombined into one account with the funds received from fees provided byA.C.A. § 21-6-307(b)?
It is my opinion that the commissions from prisoner telephone services, referred to in A.C.A. § 12-41-105, are to be combined into one account with the "Communications Facility and Equipment Fund" that is created in A.C.A. § 21-6-307(b)(2)(A).
The provisions of A.C.A. § 12-41-105 require that commissions from prisoner telephone services be credited to the sheriff's "Communications Facility and Equipment Fund." The statute states:
 (a) Commissions derived from prisoner telephone services provided in the various county and regional detention facilities in the state shall be deposited in the county treasury of the county in which the detention facility is located and shall be credited to the sheriff's office fund.
 (b)(1) Of the commissions deposited in the sheriff's office fund in each county pursuant to subsection (a) of this section, one hundred percent (100%) shall be credited to the sheriff's office communications facility and equipment fund.
 (2) Each sheriff's office may allocate for the maintenance and operation of the county jail up to fifty percent (50%) of the commissions deposited to the sheriff's office communications facility and equipment fund.
 (c) The provisions of this section do not apply to funds derived from prisoner telephone services provided in Department of Correction facilities or Department of Community Punishment facilities or in municipally owned detention facilities or in county detention facilities in counties with a population of one hundred seventy-five thousand (175,000) or more according to the latest federal decennial census.
A.C.A. § 12-41-105 (emphasis added).
The "Communications Facility and Equipment Fund," referred to above in A.C.A. § 12-41-105, was created by Act 399 of 1977, which is codified at A.C.A. § 21-6-307. The pertinent provision of that statute states:
 (b)(1) Seventy-five percent (75%) of all fees collected by the sheriff shall be paid into the county treasury in the manner provided by law, or to the person entitled to receive the money, or his order, or his attorney of record.
 (2)(A) The remaining twenty-five percent (25%) of all fees collected by the sheriff shall be used by the sheriff to establish a special fund to be known as the Communications Facility and Equipment Fund.
A.C.A. § 21-6-307(b)(1)(2)(A) (emphasis added).
The legislature's specific reference in A.C.A. § 12-41-105 to the "Communications Facility and Equipment Fund" is clearly a reference to the fund created in A.C.A. § 21-6-307(b)(2)(A). This conclusion is compelled by the rule of statutory interpretation under which the Arkansas Supreme Court has consistently held that when the construction of a statute is at issue, the General Assembly will be presumed to have enacted the statute with full knowledge of prior legislation on the same subject. See, e.g., Davis v. Old Dominion Freight Line, Inc.,341 Ark. 751, 20 S.W.3d 326 (2000). Because A.C.A. § 12-41-105 has to do with certain fees collected by the sheriff, the legislature is presumed to have enacted it (in 1995) with full knowledge of the provisions of A.C.A. § 21-6-307, which also has to do with fees collected by the sheriff. Indeed, the fact that the legislature, in enacting A.C.A. §12-41-105, used the specific title of the fund that was created in A.C.A. § 21-6-307(b)(2)(A) is evidence that it intended to refer to this particular fund and not some other fund.
For this reason, I conclude that the commissions from prisoner telephone services referred to in A.C.A. § 12-41-105 are to be combined into one account with the "Communications Facility and Equipment Fund" that is created in A.C.A. § 21-6-307(b)(2)(A).
Question 2 — If both the fees provided in A.C.A. § 21-6-307(b) and thecommissions derived from A.C.A. § 12-41-105 are to be placed into asingle fund account, are those portions derived from the fees still to beused solely for the purposes enumerated in A.C.A. § 21-6-307(b)(2)(C), oris the entire fund subject to being allocated up to 50% for themaintenance and operation of the county jail?
It is my opinion that only the portion of the "Communications Facility and Equipment Fund" that is attributable to commissions derived from prisoner telephone services is subject to the allocation provision of A.C.A. § 12-41-105(b)(2). Again, that provision states:
 (b)(2) Each sheriff's office may allocate for the maintenance and operation of the county jail up to fifty percent (50%) of the commissions deposited to the sheriff's office communications facility and equipment fund.
A.C.A. § 12-41-105(b)(2) (emphasis added).
The above-quoted provision does not authorize an allocation of up to 50% of the entire fund for the maintenance and operation of the county jail. Rather, it only authorizes an allocation of up to 50% of the commissions derived from prisoner telephone services for maintenance and operation of the county jail. This statutory language is unambiguous. It must therefore be interpreted just as it reads. Moon v. Citty, 344 Ark. 500,42 S.W.3d 459 (2001). Accordingly, I must conclude that only the portion of the fund attributable to commissions derived from prisoner telephone services may be allocated up to 50% for the maintenance and operation of the county jail. The remainder of the fund is subject to the requirements of A.C.A. § 21-6-307(b)(2)(C), which are stated as follows:
 (C) All sums paid into the Communications Facility and Equipment Fund by the sheriff may accumulate as to principal and interest until such time as the deposits or a portion thereof are needed by the sheriff to train operations staff, to operate, equip, repair, or replace existing communications equipment, to purchase additional communications equipment, or to otherwise improve a communications facility or system for the sheriff's department.
A.C.A. § 21-6-307(b)(2)(C).
I acknowledge that a question may arise as to whether there is a conflict between the above-quoted section and the provision of A.C.A. §12-41-105(b)(2), discussed above, which authorizes the use of a portion of the fund for the maintenance and operation of the county jail (not one of the purposes stated in A.C.A. § 21-6-307, which purports to govern "all sums paid into the . . . Fund[."]) It is my opinion that the two provisions do not conflict. The county jail allowance of A.C.A. §12-41-105(b)(2) is simply more specific than the purposes stated in A.C.A. § 21-6-307(b)(2)(C). The Arkansas Supreme Court has consistently held that if two statutes address the same subject and one is more specific than the other, the one that is more specific should take precedence. See, e.g., L.H. v. State, 333 Ark. 613, 973 S.W.2d 477
(1998); City of Ft. Smith v. Tate, 311 Ark. 405, 844 S.W.2d 356 (1993). Moreover, statutes relating to the same subject should be read in a harmonious manner, if possible. Id. Applying these principles to the interpretation of A.C.A. § 12-41-105 and A.C.A. § 21-6-307, I conclude that the two statutes can be read harmoniously if A.C.A. § 12-41-105 is simply interpreted as stating a more specific use of the Communications Facility and Equipment Fund than does A.C.A. § 21-6-307.
Question 3 — Does the sheriff have the authority to make expendituresfrom the Communications Facility and Equipment Fund without the quorumcourt appropriating such an expenditure? Does the proper procedure forexpending money from the Fund (i.e., the sheriff's discretion orappropriation by the quorum court) differ based on whether the funds to beexpended were generated by fees or telephone commissions?
It is my opinion that the sheriff does have the authority to make expenditures from the Communications Facility and Equipment Fund without the quorum court appropriating such an expenditure.
The appropriation requirement applies only to moneys paid out of the county treasury. See A.C.A. § 14-14-1102(b)(2)(C)(i); Ark. Const., Art.16, § 12 (this constitutional provision is applicable to counties, seeMackey v. McDonald, 255 Ark. 978, 501 S.W.2d 726 (1974); Nevada Countyv. News Printing Company, 139 Ark. 502, 206 S.W. 899 (1918)). The Communications Facility and Equipment Fund is created from two sources: (1) fees that are explicitly directed not to be paid into the county treasury, but rather, to be retained by the sheriff, if collected by him, see A.C.A. § 21-6-307(b); and (2) fees that are directed by state law to be paid from the county treasury into the sheriff's county office fund, see A.C.A. § 12-41-105. (In my opinion, it is not necessary for the quorum court to appropriate the payment of telephone commissions under A.C.A. § 12-41-105 from the county treasury into the Fund, given that such payment is required by state law.) Because expenditures from the Communications Facility and Equipment Fund do not constitute expenditures from the county treasury, it is my opinion that the sheriff has the authority to make expenditures out of the Fund without the necessity of an appropriation by the quorum court. Accord, Op. Att'y Gen. No. 86-528.See also, Op. Att'y Gen. No. 95-005 at footnote 2. Finally, because (as explained above) none of the fees that make up the Fund are ever subject to appropriation, the sheriff possesses the discretion to make expenditures from the Fund without appropriation regardless of whether the expenditure comes from moneys generated by fees or by telephone commissions.
Question 4 — Is it within the sheriff's discretion as to whatpercentage, if any, of the Fund (up to 50%) is expended for operation andmaintenance of the county jail or can the quorum court appropriate up to50% of the fund for that purpose?
It is my opinion that it is within the sheriff's discretion as to what percentage (up to 50%) of the Communications Facility and Equipment Fund is to be allocated for expenditure on operation and maintenance of the county jail. I base this conclusion on the plain language of the statute. The applicable provision states:
 (b)(2) Each sheriff's office may allocate for the maintenance and operation of the county jail up to fifty percent (50%) of the commissions deposited to the sheriff's office communications facility and equipment fund.
A.C.A. § 12-41-105(b)(2).
The above-quoted language clearly indicates a legislative intent to grant the sheriff, rather than the quorum court, the authority to determine the amount of expenditures to be made for the operation and maintenance of the county jail. Such an intent would be reasonable, given that the sheriff is in the best position to know what the needs are concerning the operation and maintenance of the county jail. Moreover, since (as concluded in response to Question 3) expenditures for this purpose do not require appropriation by the quorum court, it follows that a determination of the amount of such expenditures can be made without input from the quorum court.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General