WACKENHUT CORPORATION and St. Paul Fire &
Marine Ins. Co. *v.* Geneva Marchelle JONES

CA 00–865                                                40 S.W.3d 333

Court of Appeals of Arkansas
Division III
Opinion delivered March 21, 2001

*Chisenhall, Nestrud, & Julian, P.A.*, by: *Jim L. Julian* and *Marck W. Hodge*, for appellants.

*McCormick Law Firm, P.A.*, by: *David H. McCormick*, for appellee.

JOHN F. STROUD, JR., Chief Judge. Appellants, Wackenhut Corporation and St. Paul Fire & Marine Insurance Company, appeal the Workers' Compensation Commission's determination that appellee Geneva Marchelle Jones's left knee replacement was a reasonable and necessary consequence of her compensable injury under Ark. Code Ann. § 11-9-508(a) (Repl. 1996). We affirm.

Appellee, a security guard employed through appellants at Arkansas Nuclear One, sustained a compensable injury on November 21, 1996, when she slipped on the wet running board of a truck and fell, injuring her left knee. She was treated conservatively by Dr. Terry Green, an orthopedic surgeon, and released to return to work on December 2, 1996.

Appellee continued to experience pain after her return to work, and she was referred to Dr. James Mulhollan, an orthopedic surgeon specializing in arthroscopic knee surgery, in April 1997. Dr. Mulhollan performed surgery on appellee's left knee on April 14, 1997, and performed a second surgery on the left knee[1] on July 1, 1998.

---

[1] Dr. Mulhollan performed surgery on appellee's right knee in October 1997; however, this surgery was not work related and is not the subject of this appeal.

Appellee returned to work on July 15, 1998, and worked on limited duty status until October 21, 1998, when she tripped on a mat at work and strained her knee again. Appellee did not return to work after this injury, and Dr. Barry Sorrells performed total knee replacements on both knees on March 2, 1999.

Appellee made a claim against appellants for the left knee replacement surgery, which appellants refused to pay. The administrative law judge denied appellee's claim; however, the Commission reversed that decision and awarded appellee benefits. Appellants now appeal, arguing that the surgery was not a reasonable and necessary consequence of appellee's compensable injury.

■ ■ The standard of review in workers' compensation cases is well-settled. We view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm the decision if it is supported by substantial evidence. *Geo Specialty Chem. v. Clingan*, 69 Ark. App. 369, 13 S.W.3d 218 (2000). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Air Compressor Equip. v. Sword*, 69 Ark. App. 162, 11 S.W.3d 1 (2000). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Geo Specialty, supra*. What constitutes reasonable and necessary medical treatment is a question of fact for the Commission. *Green Bay Packaging v. Bartlett*, 67 Ark. App. 332, 999 S.W.2d 695 (1999). When the primary injury is shown to have arisen out of and in the course of the employment, the employer is responsible for any natural consequence that flows from that injury; the basic test is whether there is a causal connection between the two episodes. *Jeter v. B.R. McGinty Mech.*, 62 Ark. App. 53, 968 S.W.2d 645 (1998).

In its decision, the Commission relied upon the deposition testimony of Dr. Mulhollan in awarding benefits to appellee. In his deposition, Dr. Mulhollan testified that appellee was bowlegged, which caused the load on the inner part of her knee to be dramatically higher than it is in the outer compartment of the knee. This condition is known as varus degeneration, which is an angular degenerative process, and it is the cause of most knee failures in females in their fifties, sixties, and seventies; however, appellee was in her early forties at the time of her knee replacements. He testified that when he first saw appellee in April 1997, her left knee, on a scale of one to four, with four being the worst, was probably a

grade one, and her right knee was already a grade two or three. However, by January 1999, both knees had degenerated to a four-plus level, which necessitated the double-knee replacement.

Dr. Mulhollan unequivocally stated that appellee's compensable injury was the start of the rapid deterioration of appellee's knee, that it was "probably predestined that this was going to occur, and the job injury just happened to be what triggered this one knee." When asked whether the deterioration would have taken place as quickly without the job injury, Dr. Mulhollan replied, "That would be a purely speculative guess, because under my very eyes the opposite knee had the same process occur. So it may well have been predestined that it was going to occur, it just so happened that the job injury started the process on the left side." When asked by appellants' attorney whether it was his belief that the job injury probably exacerbated or accelerated the need for treatment of appellee's condition, Dr. Mulhollan replied, "That's correct." On redirect examination, the following dialogue occurred between Dr. Mulhollan and appellee's counsel:

APPELLEE'S COUNSEL:

In terms of when [appellee] would have probably faced this [knee replacement] in the future had not this injury occurred, what, in your opinion — when would this have probably manifested itself to a degree that she would have had that knee replacement?

DR. MULHOLLAN:

You know, I can't imagine. I think —. All I can really say is that it just probably occurred sooner.

APPELLEE'S COUNSEL:

Any figure, in your best professional judgment, of how much sooner because of the job-related injury?

DR. MULHOLLAN:

Probably the best guesstimate of how to come up with that number would have to be based on the —. By January of 1999, both knees had reached a 4+ degenerative level.

APPELLEE'S COUNSEL:

That's the most severe?

DR. MULHOLLAN:

That's as bad as it can be. And this, of course, is when I referred her to Dr. Sorrells to have total replacement or osteotomy. But in any event, one knee had an injury and one knee didn't have an injury prior to that, and they both ended up at the same level at the same time. So, you know, I guess I really —. The only timetable I can give you is that I think it happened quicker than it probably would have without the job injury, but probably not a wide time span different.

Appellants contend that our supreme court's decisions in *Crudup v. Regal Ware, Inc.*, 341 Ark. 804, 20 S.W.3d 900 (2000), and *Frances v. Gaylord Container Corp.*, 341 Ark. 527, 20 S.W.3d 280 (2000), mandate reversal of the Commission's decision. In *Frances, supra*, the supreme court held that "expert opinions based upon 'could,' 'may,' or 'possibly' lack the definiteness required to meet the claimant's burden to prove causation pursuant to section 11-9-102(16)(B)." 341 Ark. at 533, 20 S.W.3d at 284. This same rationale was employed by the supreme court one month later in *Crudup, supra*. We disagree with appellant's argument that the language in *Frances* and *Crudup* require reversal in the case presently before us.

An expert opinion is to be judged upon the entirety of the opinion, and it is not validated or invalidated on the presence or lack of "magic words." *Tyson Foods, Inc. v. Griffin*, 61 Ark. App. 222, 966 S.W.2d 914 (1998). In the present case, Dr. Mulhollan stated that the job injury began the deterioration process in appellee's left knee, and that the need for the total left knee replacement probably occurred sooner as a result of the compensable job injury. "Probably" is defined in *The American Heritage Dictionary*, New College Edition, as "most likely," and it was not expressly prohibited by the supreme court's decisions in *Frances* and *Crudup, supra*. We hold that use of the word "probably" is sufficient to satisfy the requirement of Ark. Code Ann. § 11-9-102(16)(B) (Supp. 1999) that medical opinions addressing compensability must be stated within a reasonable degree of medical certainty.

Affirmed.

JENNINGS and NEAL, JJ., agree.