Gaya SHARP *v.* LEWIS FORD, INC.,
and Crockett Adjustment, Inc.

CA 01–1115                              78 S.W.3d 746

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered June 26, 2002

*Conrad T. Odom*, for appellant.

*Davis, Wright, Clark, Butt & Carithers, PLC*, by: *Constance G. Clark*, for appellees.

LARRY D. VAUGHT, Judge. Gaya Sharp, appellant in this workers' compensation case, appeals the decision of the

Commission denying her additional benefits for treatment of her compensable injuries because the treatment was not reasonable and necessary, and because she failed to follow proper change-of-physician procedures. We affirm.

The incident leading to this case arose on December 21, 1998, when appellant stepped onto the porch at her place of employment, slipped on the ice, and tumbled down seven steps. Appellant's coworkers contacted her husband, who transported her to the emergency room of Washington Regional Hospital. She was examined and x-rays were taken. No bones were broken. Dr. Sammy Turner, the emergency room physician, in his medical report stated that "she reported that she fell down essentially seven steps, fell to a seated position and tumbled from side to side. She did not strike her head or neck or back area per se, she reports." Appellant was given prescriptions for pain medication and sent home.

Appellee accepted the injury as compensable and assisted appellant in obtaining treatment from Dr. Moffitt at the Arkansas Occupational Health Clinic in Lowell. In his examination notes from her initial visit on December 29, 1998, Dr. Moffitt observed that appellant complained of right elbow pain, swelling in her right hand, pain in her right shoulder, and tenderness in her left hip. He prescribed medication and physical therapy for her contusions and strain. He indicated that appellant did not hit her head and had no loss of consciousness at the time of her fall. She was released to return to work with no restrictions.

Subsequent to this initial examination, Dr. Moffitt saw appellant on January 5, 13, and 21, 1999. On these visits appellant complained of pain primarily in her shoulder, hip, and lower back. Dr. Moffitt continued to prescribe pain medication, heat therapy, and physical therapy. On her next visit on February 5, 1999, appellant reported that her shoulder was better, but that she still had pain in her lower and upper back. Dr. Moffitt's progress notes from this visit indicate "she is having headaches," and this is the first written documentation of appellant's complaint of headaches. The doctor prescribed additional pain medication and

medicine for sinusitis. He further noted that she was not sleeping well or coping with her injury.

Appellant sought treatment from Dr. Garrett Goss, her HMO family physician, on February 10, 1999. She complained of headaches, stiff neck, earache, dizziness, and vomiting. She had the flu and also reported having migraines in the past. She stated that she was under another physician's care for neck pain associated with the fall. Two days later appellant went to the emergency room at St. Mary's Hospital complaining of a headache. She underwent a CT scan which was negative. The ER physician recommended she see a neurologist.

On February 16, 1999, she saw Dr. Bryan Abernathy, a partner of Dr. Moffitt. Dr. Abernathy noted that appellant had been seen at St. Mary's for occipital tension-type headaches and was told that she might need to see a neurologist. He continued her therapy and pain medication and indicated that a referral to a psychologist or psychiatrist might be of benefit. Appellant testified that she did not keep her follow-up appointment with Dr. Abernathy because she did not like his demeanor.

On February 23, 1999, appellant sought treatment from Dr. Michael Morse with Neurological Associates. Dr. Michael McGhee of Garrett Goss Clinic made the referral to Dr. Morse. In his notes, Dr. Morse reported that appellant fell down steps at work and hit her left temple. He stated that appellant reported having headaches after the fall but not before. Appellant told Dr. Morse that she had been going to physical therapy, but that the therapy made the headaches worse. Dr. Morse diagnosed appellant with post-traumatic migraines.

At the suggestion of her sister, appellant next sought treatment from Dr. Tomlinson at the Orthopedic Institute. Dr. Tomlinson noted that appellant hit her head and injured her neck and shoulder in a work-related incident. His report stated that after the injury appellant had migraine headaches, neck pain and right shoulder pain. Dr. Morse diagnosed appellant with cervical strain/sprain, scapulothoracic myofascial syndrome, right shoulder, and Type II rotator-cuff tendinitis.

Appellant continued to seek treatment from Dr. Morse even though appellee informed her that it would not pay because she had bypassed the change-of-physician procedures. Dr. Morse continued to treat her up to the time of the hearing. He prescribed Prozac and Zomig for her headaches, loss of memory, loss of concentration, depression, and mood swings.

Upon referral from Dr. Morse, appellant began seeing Dr. Betty Back, Dr. Morse's wife. Appellant testified that at the time of her initial visit with Dr. Back, she was experiencing severe headaches, dizziness, occasional blackouts, pain, extreme depression, short-term memory loss, and loss of concentration. Dr. Back diagnosed appellant with post-concussional disorder. She treated appellant with outpatient cognitive rehabilitation, participation in a traumatic brain injury support group, biofeedback for headaches and neck pain, and individual counseling.

Appellant admitted that she did not recall whether she hit her head in the fall because it happened so quickly. She also testified in her deposition that she had bad headaches before the injury, and that she tended to have headaches about once a week. She testified that although she told Dr. McGhee that she had migraines before the accident, she was never diagnosed with migraines. She stated that she stopped going to the Lowell clinic because she was not getting results.

At the hearing, appellant admitted that her treatment with Drs. Morse, Back, and Tomlinson was not authorized, but that she did not realize that she was required to request authorization. She testified that she was never sent any forms on how she should request a change of physician. However, on cross-examination, she testified that she recognized an AR-N form that was brought home by her husband, who worked for Lewis Ford at a different store. She admitted signing the form, and that in response to the question contained in the form: what part of your body was injured, she answered "my right shoulder, right arm, my middle and lower back, left hip, left leg, knee, and ankle." The sentence immediately proceeding appellant's signature on the form states, "my signature below indicates that I have been provided with my rights regarding change of physician."

During her testimony, appellant agreed that the initial emergency room report, as well as her first few visits with Dr. Moffitt up to February 5, 1999, did not include any indications that she experienced any head injury. She testified that she did not have any memory of hitting her head during the fall, and that she did not know why Dr. Morse's records indicated that she hit her left temple on a step.

Although appellee initially accepted appellant's injury as compensable, it controverted her additional claims on the grounds that the medical treatment she obtained was unauthorized and was not reasonable and necessary for her injury. The administrative law judge (ALJ) found that appellant failed to prove by a preponderance of the evidence that she was entitled to additional medical treatment for her compensable injuries. In addition, the ALJ found that the treatment by Drs. Tomlinson, Morse, and Back was not authorized because appellant failed to follow the change of physician protocol.

After a de novo review, the Commission affirmed and adopted the findings of the ALJ, noting that appellant's contention that she sustained a concussion during a tumble down the steps was not established by a preponderance of the evidence; that there was no objective medical evidence of a concussion or other brain injury; and that the hand delivery of Form AR-N satisfied the statutory delivery requirements. It also noted that because appellant's additional treatment did not involve emergency treatment, appellees were not liable for the unauthorized treatment. This appeal followed.

When considering the appropriateness of the Commission's decision regarding workers' compensation benefits, this court views the evidence in the light most favorable to the Commission's decision. *See Crudup v. Regal Ware, Inc.,* 341 Ark. 804, 20 S.W.3d 900 (2000). Our determination is not based on whether we would have reached a different result than the Commission or whether the evidence supports a contrary finding. *See Wackenhut Corp. v. Jones,* 73 Ark. App. 158, 40 S.W.3d 333 (2001). Rather, the decision is affirmed when this court determines that the Commission's ruling is supported by substantial

evidence, *i.e.*, evidence that would allow fair-minded persons to reach the same conclusion as the Commission when presented with the same facts. *See id.*

Appellant contends that the Commission's decision that her medical care was not compensable because it was not reasonable and necessary and because she did not follow the change of physician rules is not supported by substantial evidence. We disagree and affirm.

▮ The issue before the Commission concerned the extent of appellant's injuries following her work-related fall, and whether objective medical findings established the existence and extent of a brain injury allegedly sustained during her fall. Compensable injuries must be established by medical evidence supported by objective findings, *i.e.*, findings that do not come within the voluntary control of the claimant. *See* Ark. Code Ann. § 11-9-102(4)(D); (16)(A)(i) (Repl. 2002).

The first indication in any medical record that appellant suffered headaches subsequent to her December 21, 1998, injury was recorded on February 5, 1999. The initial notations regarding appellant's headache symptoms were reported in conjunction with diagnoses of flu and sinusitis-type symptoms. The medical report prepared by the emergency room physician shortly after the accident specifically notes that appellant did not strike her head, and diagnosed only musculoskeletal soft tissue contusions and strains.

▮ Dr. Back evaluated appellant on October 19, 1999, and diagnosed her with a post-concussional disorder. Although Dr. Back testified in her deposition that it is not necessary for someone to strike her head in order to suffer post-concussion syndrome, she agreed that it is more common to have a concussion in conjunction with a blow to the head. She also agreed that a concussion would not likely occur in a slip-and-fall accident absent a direct blow to the head. Additionally, the objective CT scan of appellant's brain did not indicate an abnormality. Although Dr. Back opined that the Halsted-Reitan battery that she administered to appellant is an objective test that would be difficult to manipulate, she conceded that her neuropsychological testing relied on responses made by appellant. We therefore conclude that substan-

tial evidence exists to support the Commission's finding that appellant failed to establish evidence of a concussion or other brain injury.

■ When a claimant desires a change of physician, she must petition the Commission for approval. *See* Ark. Code Ann. § 11-9-514(a)(2)(A) (Repl. 2002). The claimant is entitled to petition the Commission one time only for a change, and the Commission may approve the change with or without a hearing. *See id.* Subsections (c)(1)-(3), which outline delivery by the employer of a form that explains the employee's rights and responsibilities concerning the change, are pertinent to the appeal and read as follows:

> (c)(1) After being notified of an injury, the employer or insurance carrier shall deliver to the employee, in person or by certified or registered mail, return receipt requested, a copy of a notice, approved or prescribed by the Commission, which explains the employee's rights and responsibilities concerning change of physician.
>
> (2) If, after notice of injury, the employee is not furnished a copy of the notice, the change of physician rules do not apply.
>
> (3) Any unauthorized medical expense incurred after the employee has received a copy of the notice shall not be the responsibility of the employer.

■ ■ We are obliged to strictly construe and apply the workers' compensation act. Ark. Code Ann. § 11-9-704(c)(3) (Repl. 2002). In this case, it is not disputed that appellant sought additional unauthorized, non-emergency treatment from Drs. Tomlinson, Morse, and Back. Appellant further admitted that the day after her injury, her husband, who also worked for appellee Lewis Ford, brought her a Form AR-N, which appellant signed and which was admitted into evidence. Above her signature is the confirmation that "I have been provided with my rights regarding change of physician." The personnel director for Lewis Ford testified that she believed that she had sent the form home with appellant's husband, who worked in her office. The Commission found that this was sufficient delivery to satisfy the statute. Construing the statute strictly, as we must, there is sufficient evidence

upon which the Commission could find that that the employer "furnished" a copy of the form, which was "deliver[ed] to the employee, in person." Even under strict construction, the point of the statute is clearly that there must be proof that appellant received the form after her injury, and there is such proof. Therefore, we affirm.

JENNINGS, ROBBINS, and GRIFFEN, JJ., agree.

CRABTREE and BAKER, JJ., dissent.

KAREN R. BAKER, Judge, dissenting. In my opinion, this case should be reversed. I do not disagree with the majority that there is substantial evidence to support a finding that appellant received a notice regarding her right to a change of physician from some source. However, I do not feel that this is the relevant inquiry. Instead, there must be substantial evidence that the employer complied with Ark. Code Ann. § 11-9-514 (Repl. 2002). No evidence supports the Commission's finding that appellee employer complied with the provisions of Ark. Code Ann. § 11-9-514 in giving appellant notice of the procedure involved in changing physicians.

Arkansas Code Annotated § 11-9-704(c)(3) (Repl. 1996) states that we are to construe the workers' compensation statutes strictly. Arkansas Code Annotated § 11-9-514(a)(2)(A) allows a one-time-only change of physician. Sub-section (c)(1) mandates that the employer, after being notified of an injury, deliver a copy of a notice to the employee, *in person or by certified or registered mail, return receipt requested,* explaining the employee's rights and responsibilities concerning change of physician. (Emphasis added.) If the employee is not furnished a copy of the notice, the change of physician rules *do not apply.* Ark. Code Ann. § 11-9-514(c)(2) (Emphasis added.)

In this case, Linda New of Crockett Adjustment testified that she had no proof that the ARN form was actually sent to appellant. Moreover, she testified that ARN forms were not sent by certified or registered mail per the statutory requirements. Connie Proctor, personnel director for appellee, testified that it is the company's practice to send the injured worker an ARN form;

however, she had no recollection of the manner in which the form was given to appellant. She testified, without any certainty, as to the possibility that she gave the form to appellant's husband to give to her and that she was unsure of how she got the form back from appellant. Appellant testified that she recognized the ARN form; however, she stated that, "I believe that it was brought home to me — either this document or a copy of it — by my husband. I'm not sure, though." She had no recollection of ever seeing the notice of the change of physician procedures which should have been attached to the ARN form. Above appellant's signature on the ARN form the following statement appeared. "My signature below also indicates that I have been provided with my rights regarding change of physician." The majority believes this is sufficient to show she received the notice. I do not disagree. However, whether or not appellant actually received the notice, there must be substantial evidence that the employer complied with Ark. Code Ann. § 11-9-514.

The Commission based its decision on the finding that the husband was acting as appellee's agent when delivering the ARN form to appellant. Substantial evidence has been defined as valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion and force the mind to pass beyond conjecture. *Arkansas State Racing Comm'n v. Wayne Ward, Inc.*, 346 Ark. 371, 57 S.W.3d 198 (2001). In this case, the Commission's finding is troublesome in that there was a complete lack of evidence that the husband was under appellee's authority and acting as appellee's agent when he purportedly delivered the ARN form to appellant. I am persuaded that the Commission could not logically and reasonably find that the husband was acting as appellee's agent, given the lack of evidence in this case. Thus, there is not substantial evidence to support the Commission's finding that the husband was acting as appellee's agent or that he actually delivered the ARN form to appellant.

Based on our substantial evidence standard of review, this case should be reversed due to the lack of evidence that the employer complied with Ark. Code Ann. § 11-9-514.

CRABTREE, J., joins.