K II CONSTRUCTION COMPANY and Bituminous
Casualty Corporation *v.* Harold CRABTREE

CA 01–727                                                79 S.W.3d 414

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered July 3, 2002

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Randy P. Murphy* and *Julia M. Hancock*, for appellants.

No response.

A NDREE LAYTON ROAF, Judge. K II Construction Company and Bituminous Casualty Corporation appeal the Workers' Compensation Commission's findings in favor of Harold Crabtree, who sustained an admittedly compensable back injury on November 3, 1998. For reversal, appellants contend that the Commission erred in finding that Crabtree was entitled to surgical treatment and in awarding additional temporary total disability (TTD) benefits. We affirm.

On November 3, 1998, Harold Crabtree suffered an injury to his back while employed by K II Construction. K II Construction accepted the injury as compensable, paid temporary total disability benefits from November 4, 1998, through October 19, 1999, and paid permanent disability benefits pursuant to a ten-percent rating.

On November 9, 2000, a hearing was held before the administrative law judge, and Crabtree claimed that he was entitled to additional medical treatment, including surgery. K II Construction argued that Crabtree had received all the benefits to which he was entitled and that his current back problems were unrelated to his compensable injury, but were instead related to an incident involving lifting a gas can that occurred away from work. The ALJ found that Crabtree was entitled to temporary total disability benefits from November 4, 1998, through September 22, 1999, and from February 23, 2000, to a date yet to be determined, and that K II Construction should pay all reasonable hospital and medical expenses arising out of the November 3, 1998, injury, including the recommended surgery. The full Workers' Compensation Commission affirmed and adopted the findings of the ALJ.

On appeal, KII Construction argues that the Commission erred in finding that Crabtree was entitled to additional medical treatment in the form of surgery to be performed by Dr. Contreras and in awarding temporary total disability benefits from February 23, 2000, through a date yet to be determined. On appeal in workers' compensation cases, the appellate court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Workers' Compensation Commission's findings and will affirm if those findings are supported by

substantial evidence. *Jeter v. B.R. McGinty Mechanical*, 62 Ark. App. 53, 968 S.W.2d 645 (1998). Substantial evidence is that relevant evidence which reasonable minds might accept as adequate to support a conclusion. *Georgia-Pacific Corp. v. Carter*, 62 Ark. App. 162, 969 S.W.2d 677 (1998). If reasonable minds could reach the conclusion of the Workers' Compensation Commission, its decision must be affirmed. *Id.* The appellate court cannot undertake a *de novo* review of the evidence and is limited by the standard of review in workers' compensation cases. *Id.*

██ ██ K II Construction contends that Crabtree received all the benefits to which he was entitled for the November 3, 1998, injury because the medical records established that the incident on November 3rd did not result in a disc protrusion or herniation. Crabtree's counsel did not file a brief. The issue of whether treatment is reasonable and necessary is a question of fact for the Commission. *Wackenhut Corp. v. Jones*, 73 Ark. App. 158, 40 S.W.3d 333 (2001). However, when the primary injury is shown to have arisen out of and in the course of the employment, the employer is responsible for any natural consequence that flows from that injury, and the basic test is whether there is a causal connection between the injury and the consequences of such. *Id.* A nonwork-related independent intervening cause does not require negligence or recklessness, but if the claimant is engaged in unreasonable conduct, the result may be an independent intervening cause. *Davis v. Old Dominion Freight Line, Inc.*, 341 Ark. 751, 20 S.W.3d 326 (2000); *see* Ark. Code Ann. § 11-9-102(4)(F)(iii) (Supp. 1999).

K II Construction contends that "there is no medical evidence to establish a causal connection between the disc herniation and the injury of November 3, 1998," and that "[t]he only reasonable explanation for the herniated disc is that the appellee injured his back while engaged in an activity having nothing to do with his employment." We do not agree. After his November 3, 1998, injury, Crabtree was seen at the emergency room and received a referral to Dr. McCrary and then to Dr. Contreras, a neurosurgeon. Although the initial MRI on November 6, 1998, did not reveal a disc protrusion or herniation, Dr. Contreras ordered that Crabtree receive conservative treatment, including

epidural steriod injections, additional diagnostic tests, and physical therapy. Both a myelogram and CT scan performed in February 1999 revealed a disc bulge at L4-L5, with the S-1 nerve root affected.

On July 21, 1999, Crabtree reported to Dr. Contreras that he had tried to pick up a gasoline can containing a gallon and a half of gasoline and felt significant pain. Dr. Contreras performed a second lumbar MRI on July 28, 1999. It showed a "new disc protrusion" in the area of the bulging disc, which was diagnosed as a herniated L5-S1 disc. Dr. Contreras recommended decompression surgery; Crabtree initially declined the surgery, but on February 23, 2000, indicated to Dr. Contreras that he was ready to proceed with surgery. On March 13, 2000, Dr. Contreras wrote a report reflecting that he would recommend surgical intervention for Crabtree's herniated disc. After being evaluated by Dr. Anthony Russell, a neurosurgeon, pursuant to K II Construction's request, Dr. Russell agreed with Dr. Contreras that surgical intervention was the best hope for long-term improvement in Crabtree's condition and opined that while the abnormality of the disc noted in February 1999 may have predisposed Crabtree to the subsequent herniation, there was no way of stating with any reasonable degree of medical certainty that the herniation seen in July 1999 was any more related to the bulge seen in February or some other unforeseen event.

With regard to Crabtree's herniation, Dr. Contreras testified in a deposition that there was a "new finding" in the July 1999 MRI of a small herniation and that he related the disc rupture to Crabtree picking up a gasoline can. However, he also testified that "a small protrusion or little small focal disc rupture can turn into a larger disc rupture," that the earlier myelogram showed "a little bit of a bulge of the disc to the right of the midline," and that he thought that when Crabtree lifted the gas can, "more disc materials squished out of the lining and by then he had a much larger local rupture of the disc that was amendable to surgery."

The ALJ found that it was not disputed that Crabtree sustained an injury to his lower back arising out of and in the

course of his employment with K II Construction. The ALJ further found that

> [C]laimant has been consistent in relaying complaints of pain in his low back. . . .all attributable to the November 3, 1998, injury. . . .Claimant asserts that the account regarding lifting the gas can contained in the July 21, 1999, chart note of Dr. Contreras was the product of miscommunication. . . .The more credible of the evidence is that claimant did in fact lift the gas can containing approximately a gallon and a half of gas and experienced an increase in low back symptoms. . . . There is no evidence however to reflect that the same constituted an independent intervening event, such that the liability of the respondents is severed. Claimant was within his healing period at the time of the occurrence.

The ALJ and the Commission found Crabtree's testimony to be credible and that the incident involving the gas can did not result in a second injury or intervening cause that would break the causal connection, but simply amounted to an increase in Crabtree's symptoms, which he reported to his treating physician. Dr. Contreras's testimony supports this finding, and the ALJ specifically cited to Drs. Russell's and Contreras's testimony in reaching the conclusion that Crabtree was entitled to medical benefits for the herniation. What constitutes reasonable and necessary medical treatment is a fact question for the Commission. We find substantial evidence to support its decision to award medical expenses, including the recommended surgery.

K II Construction further contends that it has paid all the benefits that Crabtree is entitled to and that he is no longer within his healing period. Specifically, K II Construction argues that "[t]he credible proof demonstrates that the need for surgery and continued disability was caused by an independent intervening cause" because if Crabtree were completely incapacitated from earning wages it would be "unreasonable for him to lift and carry around a gas can." This argument is unavailing.

Temporary total disability is that period within the healing period in which an employee suffers a total incapacity to earn wages. *American Greetings Corp. v. Garey*, 61 Ark. App. 18,

963 S.W.2d 613 (1998). When an injured employee is totally incapacitated from earning wages and remains in his healing period, he is entitled to temporary total disability. *High Capacity Prods. v. Moore*, 61 Ark. App. 1, 962 S.W.2d 831 (1998). The healing period ends when the employee is as far restored as the permanent nature of his injury will permit, and if the underlying condition causing the disability has become stable and if nothing in the way of treatment will improve that condition, the healing period has ended. *Id.* The question of when the healing period has ended is a factual determination for the Commission that will be affirmed if it is supported by substantial evidence. Here, the ALJ concluded that

> [a]t the point claimant decided that he did not want to proceed with surgery, he was no longer entitled to the payment of temporary total disability benefits. Claimant's entitlement to medical benefits as a result of the November 3, 1998, compensable injury did not cease. Claimant is entitled to ongoing medical treatment. . . . Clearly the underlying condition causing the claimant's disability has not become stable and further treatment is available which would improve that condition. The preponderance of the evidence reflects that surgical intervention recommended relative to the treatment of claimant's herniated lumbar disc is reasonable, necessary, and related to the November 3, 1998, compensable injury. . . . The evidence preponderates that when claimant elected to proceed with surgical intervention on February 23, 2000, . . . he continued within his healing period and [was] totally incapacitated from engaging in gainful employment.

The Commission's decision to award temporary total disability benefits from February 23, 2000, to a date yet to be determined is supported by substantial evidence. Crabtree's condition has not stabilized, and the testimony established that surgery was the only option to allow him relief from his disability and pain.

Affirmed.

STROUD, C.J., GRIFFEN, VAUGHT, and BAKER, JJ., agree.

PITTMAN, J. dissents.

JOHN MAUZY PITTMAN, Judge, dissenting. I dissent. The Commission's opinion does not explain the action it has taken sufficiently to allow meaningful review, and we should therefore remand for the Commission to make specific findings as required by *Wright v. American Transportation*, 18 Ark. App. 18, 709 S.W.2d 107 (1986).

The appellee in this workers' compensation case sustained an admittedly compensable back injury while lifting plywood in the course of his employment with appellant construction company on November 3, 1998. Appellee never worked for appellant or any other employer after that incident. An MRI examination conducted on November 6, 1998, revealed mild degenerative disc disease at L1–L2 and L5–S1, but no evidence of acute injury or disc rupture. Appellee was treated conservatively without notable improvement. He continued to complain of pain, stating that his back hurt terribly after he tried to pick up a gas can. A repeat MRI was performed on July 28, 1999. It showed a new disc protrusion at L5–S1. Appellee ultimately agreed to have decompression surgery. He filed a claim seeking additional temporary total disability benefits and additional medical treatment in the form of the recommended surgery. In an opinion quoting appellee's physician's statement that it was impossible to state with any reasonable degree of medical certainty that the herniation was related to his work-related back injury, the Commission awarded these benefits, and this appeal followed.

For reversal, appellant contends that the Commission erred in finding that appellee was entitled to surgical treatment and in awarding additional temporary total disability benefits. I would reverse and remand for further consistent proceedings.

The Commission's opinion does not contain findings adequate to support the award of benefits. The general rule with regard to the compensability of subsequent injuries was stated in *Guidry v. J & R Eads Construction Co.,* 11 Ark. App. 219, 222, 669 S.W.2d 483, 485 (1984):

> When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows

from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own negligence or misconduct.

In the present case, there was nothing stated in the Commission's opinion to support a finding that appellee's disc herniation was a "natural consequence" of his work-related injury. The extent of the Commission's findings and reasoning on this issue is, essentially, that the herniation must have been a natural consequence of the work-related injury because there is no evidence of appellee having sustained any prior or subsequent back injury. This would be a rational conclusion, perhaps, if one assumed that disc herniations are caused only by trauma. However, there is no such evidence in the record. Furthermore, appellee's own physician stated that it was impossible to say with any reasonable degree of medical certainty that the herniation flowed from appellee's work-related injury. In this context, our supreme court has held that, where the only evidence of a causal connection is a speculative and indefinite medical opinion, it is insufficient to meet the claimant's burden of proving causation. *Crudup v. Regal Ware, Inc.,* 341 Ark. 804, 20 S.W.3d 900 (2000).

The Commission was not bound to believe the medical testimony regarding causation. However, although the Commission found this medical testimony to be significant enough to include in its opinion, it failed to reconcile that testimony with its finding that appellee's herniation was in fact caused by his work. In the absence of any explanation for rejecting this testimony, it appears that the Commission rejected it arbitrarily, and it is well-settled that the Commission may not arbitrarily disregard medical testimony. *Hill v. Baptist Medical Center,* 74 Ark. App. 250, 48 S.W.3d 544 (2001); *Swift-Eckrich, Inc. v. Brock,* 63 Ark. App. 118, 975 S.W.2d 857 (1998); *Foxx v. American Transp.,* 54 Ark. App. 115, 924 S.W.2d 814 (1996); *Crow v. Weyerhaeuser Co.,* 46 Ark. App. 295, 880 S.W.2d 320 (1994); *Reeder v. Rheem Mfg. Co.,* 38 Ark. App. 248, 832 S.W.2d 505 (1992).

In the absence of an explanation for the Commission's rejection of the physician's testimony and finding that the herniation

was the natural consequence of appellee's compensable injury, the opinion is inadequate to permit any meaningful review, and I believe we should remand for satisfactory and specific findings as required by *Wright v. American Transportation, supra.*

I respectfully dissent.