2010 Ark. 260

Kevin R. WALTERS, Jacqueline W. Walters, and Payne A. Walters, Appellants,

v.

James DOBBINS, John Ward, and the Horatio School District, Appellees.

No. 09–1004.

Supreme Court of Arkansas.

May 27, 2010.

Rehearing Denied June 24, 2010.

Pryor, Robertson, Beasley & Smith, PLLC, by: Amanda M. Thomas, Fort Smith, for appellants.

Sharon Carden Streett, Little Rock, for appellees.

PAUL E. DANIELSON, Justice.

Appellants, Kevin R. Walters, Jacqueline W. Walters, and Payne A. Walters, appeal from the order of the circuit court granting the motion for summary judgment of appellees, James Dobbins, John Ward, and the Horatio School District (collectively, "the District"), and dismissing the Walterses' complaint with prejudice. The Walterses had sued the District after Payne Walters was suspended from school for his actions taken while speaking at a school event. The Walterses assert three points on appeal: (1) that Payne's speech was not plainly offensive, did not advocate illegal activities, nor was it disruptive to the educational process; (2) that schools may not retroactively censor or punish speech based on an administrator's personal views of propriety; and (3) that Payne's due-process rights were violated, as the punishment, expulsion, and prohibition from participating in graduation ceremonies were far more severe than necessary and violated the school's own policies. We affirm the circuit court's order.

The facts are these. In May 2008, Payne Walters was a senior at Horatio High School and was eligible for graduation. Payne was also a speaker at Class Day, a school event, during which he played an audio clip from his cell phone. That clip was of a female student saying "Oh my gosh, I'm horny!" After the playing of the audio clip, Payne's cell phone was taken away and given to appellee John Ward, the superintendent of the Horatio School District, and the decision was made to suspend Payne for three days, a consequence of which was that Payne was precluded from participating in his graduation ceremony. Despite pleas by Payne and his mother for some other punishment

during a meeting on the morning of graduation day with Ward and James Dobbins, the principal of Horatio High School, the suspension decision was upheld, and Payne was not permitted to participate in the graduation ceremony.

On September 26, 2008, Payne and his parents filed a complaint against Dobbins, Ward, and the school district under the Arkansas Civil Rights Act, which is codified at Ark.Code Ann. § 16–123–101 to 16–123–108 (Repl.2006). They contended that Payne's suspension was in violation of the school's own policies, that he was denied "due process" in having the punishment inflicted, and that the punishment was in retaliation for him "exercising his First Amendment rights" and in retaliation for his father "exercising his speech and property rights under the Arkansas Constitution." They asserted that the school board "refused to meet" and allowed and acquiesced in Payne being denied the right to participate in graduation. Maintaining that the term "horny" was not obscene, they averred that, at most, Payne should have been punished by in-school punishment, such that he could have participated in graduation. The District answered the complaint, asserting that Payne was suspended for three days, thereby excluding him from participating in the ceremony, because "he played the cell phone clip containing vulgar or obscene language in his class day speech showing disrespect."

On December 8, 2008, the Walterses filed a motion for summary judgment, in which they asserted that the District was liable under the Arkansas Civil Rights Act for two reasons: (1) the suspension was improper because it violated Payne's due-process rights in that the school failed to follow its own procedures; and (2) the suspension was improper retaliation for Payne exercising his free-speech rights. They maintained that the use of the term "horny" was "not properly a punishable offense" under the school's policy, and they further argued, again, that, even were the term considered profane or disruptive, the proper punishment should have been an in-school punishment that still would have allowed Payne to participate in the graduation ceremony. Additionally, they argued that Payne's suspension violated his free-speech rights in that it was done in retaliation because the female student's stepfather, who was a school-board member, had been in the audience when the clip was played.

The District responded and filed its own cross-motion for summary judgment. In it, the District maintained that Payne received due process, in that Payne was notified the same day of the incident, both orally and by letter, that he was suspended. It further asserted that Payne and his mother were given the opportunity to meet with both Dobbins and Ward the morning before graduation. During that time, the District claimed, Payne did not deny the conduct. It asserted that its actions were not a violation of Payne's free-speech rights, where the speech was "lewd, offensive, and embarrassing to many in the audience, disrespectful to the audience, disrespectful of female students, and in particular of the female student whose voice was played in the clip," and it maintained that this was a school-sponsored activity and that the school had a legitimate interest in setting boundaries on the vulgarity of student presentations.

A hearing was held on the cross-motions for summary judgment, during which the circuit court heard arguments from both sides. On March 23, 2009, the circuit court filed a letter opinion in the matter, finding that the Walterses' motion for summary judgment should be denied and the District's summary-judgment motion granted. On May 29, 2009, the circuit

court entered its order, which found, in pertinent part:

> Certain facts are undisputed. The student was immediately advised of his improper conduct and the action taken by the school as a result of his behavior; the parents received written notification of the school's action and why it was imposed; the parents and student were able to meet with school officials the next day prior to the graduation ceremony.

> The fundamental prerequisite of due process in this situation is the opportunity to be heard and the right to be informed of the matter pending so a person can choose for himself whether to contest the claim. *Goss v. Lopez,* 419 U.S. 565, 581 [95 S.Ct. 729, 42 L.Ed.2d 725] (1975). The student received this required due process. Additionally the student was not denied education as the suspension occurred after his education was completed. The only activity he was denied was participation in the graduation ceremony. There is no right to participate in a graduation ceremony under the Arkansas State Constitution. Graduation is the ceremony symbolizing achievement of an education, not the education itself.

> The student's right to free speech was not violated. A school is entitled to disassociate itself from a student's speech to demonstrate that vulgarity is inconsistent with the fundamental values of public school education. *Bethel School District No. 403 v. Fraser, A Minor, et al.,* 478 U.S. 675, 106 S.Ct. 3159 [92 L.Ed.2d 549] (U.S.1986). [sic] Schools as instruments of the state may determine that the essential lessons of civil mature conduct cannot be conveyed in a school that tolerates lewd, indecent or offensive speech and conduct. *Id.*

> It is apparent that the student's speech was offensive and embarrassing to those in the audience as well as disrespectful to the audience and female students. The school has a legitimate interest and obligation to restrict the student's use of offensive speech during a school sponsored function and the right to discipline such behavior.

> The Defendants did not violate plaintiffs' due process or free speech rights and have not violated the Arkansas Civil Rights Act. Plaintiffs' Complaint is dismissed with prejudice.

The Walterses now appeal.

The Arkansas Civil Rights Act provides that

> [e]very person, who, under color of any statute, ordinance, regulation, custom, or usage of this state or any of its political subdivisions subjects, or causes to be subjected, any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities, secured by the Arkansas Constitution shall be liable to the party injured in an action in circuit court for legal and equitable relief or other proper redress.

Ark.Code Ann. § 16–123–105 (Repl.2006). Thus, crucial to asserting a claim under the Act is an allegation of a deprivation of a right, privilege, or immunity secured by the Arkansas Constitution. Here, the circuit court granted summary judgment on the basis that the District did not violate Payne's free-speech or due-process rights, and the Walterses urge this court to reverse the circuit court's decision.

The problem, however, is that the Walterses have not provided this court with any convincing argument or citation to authority on which to reverse. The Walterses cite solely to federal jurisprudence in

support of their arguments on appeal.[1] While federal jurisprudence can be persuasive authority, it is not binding on this court, and we have held that "a slavish following of federal precedent would render this court's opinions merely a mirror image of federal jurisprudence, which would carry with it a certain abrogation of our duty to interpret our own state constitution and follow our own state law." *State v. Brown,* 356 Ark. 460, 470, 156 S.W.3d 722, 729 (2004). In this appeal, the Walterses have failed to present this court with any convincing argument regarding when, whether, or why we should apply the federal decisions cited when deciding whether there has been a violation of one's rights under our state constitution for purposes of our Civil Rights Act, and we will not develop an appellant's argument for him.[2] *See Teris, LLC v. Chandler,* 375 Ark. 70, 289 S.W.3d 63 (2008).

We have held that we will not consider an issue if the appellant has failed to cite to any convincing legal authority in support of his argument. *See Johnson v. Encompass Ins. Co.,* 355 Ark. 1, 130 S.W.3d 553 (2003). We have further held that the failure to develop a point legally or factually is reason enough to affirm the circuit court. *See id.; see also Lake View Sch. Dist. No. 25 v. Huckabee,* 351 Ark. 31, 91 S.W.3d 472 (2002) (*mandate recalled on other grounds by Lake View Sch. Dist. No. 25 v. Huckabee,* 355 Ark. 617, 142 S.W.3d 643 (2004) (per curiam) and *Lake View Sch. Dist. No. 25 v. Huckabee,* 362 Ark. 520, 210 S.W.3d 28 (2005)). Accordingly, because the Walterses have failed to present this court with convincing and developed arguments on the issues presented, we affirm the circuit court's grant of summary judgment.

Affirmed.

BROWN, J., dissents.

BROWN, J., dissenting.

This case involves the extent of a high school senior's free-speech rights under the Arkansas Constitution. Because of the subject matter, this case has far-reaching implications. The majority of this court, however, refuses to consider the case on the basis that the student (Payne Walters) and his parents have not sufficiently "developed" the free-speech argument in this appeal. I disagree and would decide the free-speech issue presented to this court.

The Walters family brought their complaint under the Arkansas Civil Rights Act. *See* Ark.Code Ann. § 16–123–105 (Repl.2006). They claim that Payne's playing the audio clip from his cell phone (a female student's comment: "Oh gosh,

---

1. While the Walterses cite to one New York decision, it is inapposite, as it interprets New York educational laws in holding that the public-school authorities did not have the powers to bar a public-school student from graduation ceremonies under the circumstances of that case. *See Ladson v. Board of Educ., Union Free Sch. Dist. No. 9,* 67 Misc.2d 173, 323 N.Y.S.2d 545 (N.Y.Sup.Ct.1971).

2. We recognize that the Arkansas Civil Rights Act contains the following provision, apparently relied on by the parties in making their respective arguments:

  (c) When construing this section, a court may look for guidance to state and federal decisions interpreting the federal Civil Rights Act of 1871, as amended and codified in 42 U.S.C. § 1983, as in effect on January 1, 1993, which decisions and act shall have persuasive authority.

  Ark.Code Ann. § 16–123–105(c) (Repl.2006). However, the plain language of the statute permits the courts of this state to examine those cases interpreting the "federal Civil Rights Act of 1871" when construing § 16–123–105. It does not dictate that the courts of this state must always look to federal jurisprudence when determining whether a right under the Arkansas Constitution has been violated.

I'm horny!") is protected speech. As the majority opinion candidly admits, the Arkansas Civil Rights Act specifically directs that the courts of this state, when construing the Arkansas act for a deprivation of rights under the Arkansas Constitution, may look to federal decisions which interpret the federal Civil Rights Act for guidance. *Id.* § 16–123–105(c). In their brief to this court, the Walters family argues nine federal cases to support their position.[1] Seven of those cases are United States Supreme Court opinions. This citation to federal cases is entirely appropriate. The Horatio School District does not contend otherwise. In fact, the School District also relies on multiple federal cases for its argument as well as cases from other states. The School District certainly does not take the position that the free-speech issue has not been developed by the majority.

It is difficult to fully grasp what prevents the majority from deciding this case. It first states that the Walters family has cited *solely* to federal cases. As already mentioned, the Arkansas Civil Rights Act expressly allows our courts to look to federal cases "for guidance." The majority then, inexplicably, states that this court should not "slavishly follow" federal authority. No one disputes that, and neither party has advanced the notion that federal law should absolutely control the issues presented. Rather, it is offered for guidance.

ₕThe majority further takes issue with the fact that no Arkansas cases are argued by the Walters family on the student free-speech issue. That undoubtedly is because there are none. This case presents the rare opportunity for this court to address a student free-speech argument under Article 2, section 6 of the Arkansas Constitution, which provides for liberty of the press and speech, and to develop Arkansas constitutional jurisprudence in this area.[2] And yet, the majority refrains from doing so.

I would not penalize the Walters family for failing to cite Arkansas student free-speech cases that well may be nonexistent. There is enough presented for this court to decide the student free-speech issue, one way or the other, in terms of Article 2, section 6 of the Arkansas Constitution and section 16–123–105 of the Arkansas Civil Rights Act as well as federal and out-of-state cases. For all of these reasons, I dissent.

---

1. *Morse v. Frederick*, 551 U.S. 393, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007); *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); *Bethel Sch. Dist. v. Fraser*, 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986); *Bd. of Educ. v. Pico*, 457 U.S. 853, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982); *Epperson v. Arkansas*, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1968); *Thomas v. Collins*, 323 U.S. 516, 65 S.Ct. 315,

89 L.Ed. 430 (1945); *Bystrom v. Fridley High Sch.*, 822 F.2d 747 (8th Cir.1987); *Thomas v. Bd. of Educ., Granville Cent. Sch. Dist.*, 607 F.2d 1043, 1057 (2d Cir.1979).

2. In *Smith v. Brt*, 363 Ark. 126, 211 S.W.3d 485 (2005), this court noted that the chief of police had clearly alleged a violation of the right to freedom of speech under the Arkansas Constitution. Ark. Const. art 2, § 6.