2011 Ark. App. 444
**OWENS PLANTING COMPANY and American Home Assurance Company, Appellants**

v.

**Arvel B. GRAHAM, Appellee.**

**No. CA 11–135.**

Court of Appeals of Arkansas.

June 22, 2011.

John Polk Talbot, Pine Bluff, for appellants.

LARRY D. VAUGHT, Chief Judge.

Appellants Owens Planting Company and American Home Assurance Company appeal from a decision of the Workers' Compensation Commission awarding appellee Arvel Graham additional temporary-total disability (TTD) benefits from January 28, 2004, through April 9, 2007, and a statutory twenty-percent late-payment penalty. Appellants contend that the Commission's finding that Graham is entitled to additional TTD benefits is not supported by substantial evidence and that the statutory penalty is unconstitutional. We affirm.

On April 26, 2001, while working for Owens Planting Company, Graham was injured when the bucket of the front-end loader he was driving unexpectedly dropped, stopping the front-end loader and causing Graham's face to hit the steering wheel and dashboard. As a result of the accident, Graham suffered injuries to his head, arm, shoulder, back, and neck. The parties stipulated to the compensability of the incident, and appellants paid medical expenses (for the treatment of Graham's orthopaedic injuries) and TTD benefits.

Several months after the accident, Graham reported headaches, dizziness, vision and hearing problems, and he continued to experience facial pain, headaches, vertigo, and ringing in his ears. Dr. Charles Bosch, an ear, nose, and throat specialist, began treating Graham in September 2001 but was unable to cure the vertigo, head and facial pain, or dizziness. He suggested that Graham seek treatment from his family physician, Dr. Scott Hall. After a hearing in 2003, an administrative law judge awarded Graham additional benefits for Dr. Bosch's treatment and additional

TTD for an indefinite time. Appellants paid additional TTD benefits through January 27, 2004.

In December 2004, Dr. Hall referred Graham to Dr. James Fowler, another ear, nose, and throat specialist. After a physical examination and review of a CT scan, Dr. Fowler stated that Graham's nose revealed a severe left-nasal-septal deformity, which led to two surgeries performed by Dr. Fowler in February 2005 and in July 2005. After the surgeries performed by Dr. Fowler, Graham continued with complaints of headaches, balance problems, tinnitus (ringing in the ears), hearing loss, blurred and double vision, and dizziness. For Graham's complaints, Dr. Fowler recommended additional diagnostic testing with Dr. John Dornhoffer, an assistant professor of otolaryngology at UAMS Medical Center, to verify the objectivity of the vertigo, dizziness, blurred vision, and tinnitus.

Dr. Dornhoffer, who first saw Graham in December 2005, recommended additional testing. The results of an audiogram showed severe hearing loss on the left and moderate hearing loss on the right; the results of a CT scan, MRI scan, and ENG tests were within normal limits; and the results of the posturography test showed some evidence of an inner-ear problem but also demonstrated a "lateral sway," which suggested symptom amplification. Dr. Dornhoffer diagnosed Graham with vertigo, sensorineural hearing loss greater on the left than on the right, and facial trauma. Dr. Dornhoffer opined that Graham's hearing and balance issues were caused by the 2001 backhoe incident. He suggested that Graham was a candidate for a hearing aid for his right ear and a cochlear implant for his left ear. Dr. Dornhoffer referred Graham to an opthalmologist for double-vision complaints.[1]

Dr. Joseph G. Chacko, assistant professor of opthalmology and neurology at UAMS, first treated Graham in February 2006. Dr. Chacko's testing demonstrated that structurally Graham's eyes were normal; however, his periphery vision was constricted on the right. Dr. Chacko diagnosed Graham with right functional visual loss, which can occur from underlying stressors on the brain like depression, anxiety, panic attacks, and severe trauma to the head.

On September 14, 2006, a second hearing was held before the ALJ, and on December 13, 2006, the ALJ issued an opinion finding that the additional medical treatment provided by Dr. Fowler, including his referrals, was reasonable and necessary treatment for Graham's compensable injuries. The ALJ also awarded Graham additional TTD benefits from January 28, 2004, to a date to be determined. This decision was affirmed by the Commission on June 28, 2007, and later affirmed by our court on May 21, 2008, in *Owens Planting Co. v. Graham*, 102 Ark. App. 299, 284 S.W.3d 537 (2008) (*Graham I* ).

A third hearing was held before the ALJ on March 12, 2010. The issues presented were Graham's entitlement to additional medical treatment, additional TTD, and mileage expenses. Graham also argued that he was entitled to the statutory late-payment penalty, pursuant to Arkansas Code Annotated section 11–9–802(c), because the appellants failed to timely pay Graham's 2008 award. Appellants contro-

---

1. Dr. Dornhoffer also referred Graham to a trauma surgeon to evaluate the facial fractures. While there are no medical reports in the addendum, according to the Commission's 2010 decision, Graham's facial fractures were evaluated by Dr. Landon J. Duyka on May 12, 2006, who concluded that "it is unlikely that [Graham's symptoms of headaches, hearing loss, and vertigo] are caused by his history of facial fractures."

verted all of the benefits sought by Graham. On the issue of the late-payment penalty, appellants conceded that they failed to timely pay Graham the award, but they argued that the statutory penalty was unconstitutional. The ALJ found that appellants were responsible for the payment of additional TTD benefits from January 28, 2004, to December 13, 2006, and that appellants owed a twenty-percent late-payment penalty on the 2008 award.[2]

The Commission affirmed the ALJ's decision with a modification. The Commission affirmed the award of additional TTD benefits to Graham but, relying upon Dr. Chacko's opinion, extended the benefit period to April 9, 2007. The Commission also affirmed the late-payment penalty. In reaching this conclusion, the Commission found that based upon the date the mandate was issued (June 10, 2008), appellants had until June 25, 2008, to pay the award but did not issue the award check to Graham until July 2, 2008. The Commission further found that appellants failed to prove that the imposition of the penalty was unconstitutional. It is from this order that appellants appeal.

Appellants' first point on appeal is that there is a lack of substantial evidence supporting the finding that Graham is entitled to additional TTD benefits from January 28, 2004, to April 9, 2007. Where the sufficiency of the evidence is challenged on appeal, we review the evidence in the light most favorable to the findings of the Commission and will affirm if those findings are supported by substantial evidence. *Wal–Mart Stores, Inc. v. Brown,* 82 Ark. App. 600, 602–03, 120 S.W.3d 153, 155 (2003). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* at 603, 120 S.W.3d at 155.

We recognize that it is the Commission's function to determine the credibility of the witnesses and the weight to be given their testimony, *Powers v. City of Fayetteville,* 97 Ark. App. 251, 254, 248 S.W.3d 516, 519 (2007), and that when the medical evidence is conflicting, the resolution of that conflict is a question for the Commission. *Cedar Chem. Co. v. Knight,* 99 Ark. App. 162, 165, 258 S.W.3d 394, 396 (2007).

On appeal, appellants do not argue that Graham is not entitled to additional TTD benefits. Rather, they argue that substantial evidence does not support the Commission's finding that Graham is entitled to additional TTD benefits from January 28, 2004, through April 9, 2007. Instead, they argue that he is entitled to additional TTD benefits from January 28, 2004, to January 7, 2006, when Dr. Fowler opined that Graham reached maximum medical improvement.

Temporary total disability is that period within the healing period in which an employee suffers a total incapacity to earn wages. *K II Constr. Co. v. Crabtree,* 78 Ark. App. 222, 227, 79 S.W.3d 414, 417 (2002). When an injured employee is totally incapacitated from earning wages and remains in his healing period, he is entitled to temporary total disability. *Id.* at 228, 79 S.W.3d at 417. The healing period ends when the employee is as far restored as the permanent nature of his injury will permit, and if the underlying condition causing the disability has become stable and if nothing in the way of treatment will improve that condition, the healing period has ended. *Id.,* 79 S.W.3d at 417–18. The question of when the healing period has ended is a factual determination for the Commission that will be affirmed if

---

**2.** Other findings made by the ALJ (regarding mileage expenses and additional medical treatment) were abandoned by the parties in the appeal to the Commission and are not issues on appeal before our court.

it is supported by substantial evidence. *Id.*, 79 S.W.3d at 418.

In this case, the Commission detailed the testimony of Drs. Fowler, Dornhoffer, and Chacko, all of whom offered an opinion as to when Graham's healing period ended. Dr. Fowler testified that Graham reached maximum medical improvement January 7, 2006, six months after the July 2005 surgery. It was Dr. Dornhoffer's opinion that Graham's healing period ended on April 26, 2003, approximately two years from his injury. And Dr. Chacko concluded that Graham reached maximum medical improvement on April 9, 2007.

Here, the Commission was presented with medical opinions from three doctors who provided three different evaluations for Graham. Dr. Fowler treated Graham's nose and sinus cavities; Dr. Dornhoffer treated Graham's ears, addressing his hearing and balance problems; and Dr. Chacko treated Graham's visual impairment. The Commission addressed all three |₇opinions, and to the extent that those opinions about when Graham's healing period ended overlapped or conflicted, the Commission chose to accept the opinion of Dr. Chacko. It is well settled that it is the province of the Commission to weigh conflicting medical evidence, and the resolution of conflicting evidence is a question of fact for the Commission. *Colebank v. T.J. Maxx*, 2009 Ark. App. 327, 2009 WL 1153244. Because there is substantial evidence in the record to support the Commission's additional TTD benefit finding, we affirm.[3]

For their second point on appeal, appellants argue that the statutory penalty for the late payment of an award is unconstitutional. The controlling statute provides:

> If any installment payable under the terms of an award is not paid within fifteen (15) days after it becomes due, there shall be added to such unpaid installment an amount equal to twenty percent (20%) thereof. . . .

Ark.Code Ann. § 11–9–802(c) (Repl.2002). The unpaid installment at issue in this case arose out of the 2008 decision issued by our court in *Graham I*, wherein we affirmed the Commission's award of additional TTD benefits to Graham. On June 10, 2008, the clerk of our court issued a mandate affirming the Commission's award to Graham. According to section 11–9–802(c), appellants were required to pay the award to Graham by June 25, 2008. The facts are undisputed, and the appellants concede that they did not issue the award check to Graham until July 2, 2008, and he did not cash it until July 9, 2008.

|₈Appellants claim that the imposition of the statutory penalty violates their constitutional right to due process [4] and the constitutional prohibition against excessive fines.[5] They argue that the statute imposes a penalty regardless of the circumstances and culpability surrounding the delay in payment and that in this case there was no evidence that the delay in payment was due to appellants' bad faith or other intentional conduct. Appellants also argue that the penalty is excessive. According to

---

**3.** Appellants also argue that the Commission erred in relying upon Dr. Chacko's opinion because he did not treat Graham for any injury that was established by objective medical evidence. We reject this argument because objective medical evidence is not an element required to establish entitlement to TTD benefits.

**4.** U.S. Const. amend. XIV; Ark. Const. art. 2 § 8.

**5.** U.S. Const. amend. VIII; Ark. Const. art. 2 § 9.

their calculations, the TTD award was $68,235.71; therefore, the twenty-percent penalty assessed was $13,647.14. Appellants claim that such a penalty is excessive in light of the fact that the check was issued only seven days after the deadline and was cashed by Graham fourteen days after the deadline.

■ Statutes enacted by the legislature are presumed constitutional, and the burden of proving otherwise is placed on the party challenging the legislative enactment. *Golden v. Westark Cmty. Coll.*, 333 Ark. 41, 47, 969 S.W.2d 154, 157 (1998). All doubts are resolved in favor of a statute's constitutionality. *Id.*, 969 S.W.2d at 157. In the present case, appellants have not shown that section 11–9–802(c) violates their due process rights or the excessive-fines prohibition.

Appellants have not provided this court with any developed argument or citation to authority on which to reverse. They cite *Hale v. Morgan*, 22 Cal.3d 388, 149 Cal. Rptr. 375, 584 P.2d 512 (1978), where the issue was whether a California statute that imposed a $100 per-day penalty against a landlord, who deprived his tenant of utilities, violated the due process clause of the California and ₉United States Constitutions. Appellants also cite a case addressing whether a civil jury's award of punitive damages violates due process. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). Finally, they cite *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001), which addressed the appropriate standard of review when reviewing a federal district court's determination of the constitutionality of a punitive-damage award.

■ Appellants have failed to present this court with any convincing argument regarding how or why the cases they cite are applicable in deciding whether section 11–9–802(c) violated their rights under the Arkansas or United States Constitutions. Moreover, appellants have not developed their argument with citation to any case law addressing anything approaching the constitutionality of late-payment schemes analogous to section 11–9–802(c). We need not consider issues that are not supported by convincing argument or authority. *Walters v. Dobbins*, 2010 Ark. 260, at 6–7, 370 S.W.3d 209, 213; *Ark. La. Gas Co. v. Hutcherson*, 287 Ark. 247, 248, 697 S.W.2d 907, 908 (1985). Furthermore, the failure to develop a point legally or factually is reason enough to affirm. *Walters*, 2010 Ark. 260, at 7, 370 S.W.3d at 213. Therefore, we affirm the Commission's finding that appellants have failed to meet their burden of proving that section 11–9–802(c) is unconstitutional, and we affirm the award of the statutory twenty-percent late-payment penalty.

Affirmed.

HART and GLOVER, JJ., agree.